UNITED STATES of America, Appellee,

v.

Robert L. TURNER, also known
as Rob, Appellant.

UNITED STATES of America, Appellee,

v.

Gilbert L. DOWDY, Appellant.

UNITED STATES of America, Appellee,

v.

Steven D. BAKER, Appellant.

Nos. 91–1490, 91–1522 and 91–1969.

United States Court of Appeals,
Eighth Circuit.

Submitted April 13, 1992.

Decided Sept. 14, 1992.

Rehearing Denied Oct. 14, 1992 in
Nos. 91–1522 and 91–1490.

Rehearing En Banc Denied
Oct. 21, 1992 in No. 91–1522.

Gerald M. Handley, Kansas City, Mo., argued (Robert L. Turner and Molly Merrigan, on the briefs), for appellant Robert Turner.

James R. Wyrsh, Kansas City, Mo., argued (James R. Wyrsch, James R. Hobbs and Marilyn B. Keller), (on the brief), for appellant Gilbert Dowdy.

Lawrence H. Pelofsky, Overland Park, Kan., argued, for appellant Steven D. Baker.

Counsel who presented argument on behalf of the appellee was Linda L. Parker, Kansas City, Mo., argued (Jean Paul Bradshaw, II and Linda L. Parker, on the brief), for appellee.

Before RICHARD S. ARNOLD, Chief Judge, ROSS, Senior Circuit Judge, and LOKEN, Circuit Judge.

RICHARD S. ARNOLD, Chief Judge.

Robert Turner, Gilbert Dowdy, and Steven Baker appeal their convictions stemming from their involvement in a drug-distribution conspiracy. We affirm.

On February 20, 1990, a grand jury returned a twenty-seven count indictment naming eleven people, including the defendants. The indictment involved charges related to a conspiracy, headed by Dowdy, to distribute cocaine and cocaine base in the Kansas City, Missouri, area, from early 1981 through January 19, 1990. Before trial, seven of the eleven charged in the indictment pleaded guilty, with some of them agreeing to cooperate with the government. Turner, Dowdy, Dowdy's brother, and Baker went to trial. After thirty-eight days of testimony and five days of deliberations, the jury acquitted Dowdy's brother, but found the other three guilty of various crimes. It found all three guilty of conspiracy. Additionally, it convicted Dowdy of two counts of money laundering and one count of structuring currency transactions; Turner of two counts of distributing cocaine base; and Baker of one count of distribution of cocaine base and one count of possession with intent to distribute cocaine base. These appeals followed.

Dowdy was sentenced to life imprisonment for conspiracy, ten years for the currency violations, and 20 years for the two money-laundering counts, all sentences to run concurrently. Turner was sentenced to ten years and one month for each offense of conviction, all sentences to run concurrently. Baker was sentenced to life imprisonment for conspiracy and distribution and 40 years for possession with intent to distribute, all sentences to run concurrently.

### I.

All of the defendants contend that the District Court abused its discretion by denying their repeated requests for a mistrial based on the confrontations between Dowdy's lawyer, Carol Coe, and the Court. They claim that the environment of hostility created by these repeated clashes—the defendants cite at least 32 such incidents—deprived them of a fair trial. In a related argument, Turner and Baker contend that the Court abused its discretion by denying

their requests to have their trials severed from that of their co-defendants.

The parties agree that Coe's conduct during the course of the trial was, at times, outrageous.[1] She regularly argued with the judge and his rulings, even after he told her to be quiet and warned that he would hold her in contempt and fine her $100 each time she disobeyed his orders. Despite these warnings, the Court held Coe in contempt on four occasions. During the last incident, the Court had her taken into custody by U.S. Marshals. After she apologized, however, she was released, and this fourth contempt order was vacated. On March 27, 1992, this Court affirmed the District Court's three contempt citations in *United States v. Dowdy*, 960 F.2d 78 (8th Cir.1992). In addition to the incidents leading to her citations for contempt, Coe showed disrespect for and provoked the Court on several other occasions as well.

▮ The confrontations between the District Court and Coe were unfortunate. After reviewing the incidents cited by the defendants in the context of the entire trial, see *United States v. Singer*, 710 F.2d 431, 437 (8th Cir.1983) (en banc), however, we do not believe the confrontations prejudiced them or deprived them of a fair trial. While the number of confrontations was certainly significant, they are relatively insignificant in view of the overall length of the trial—38 days. A fair number of the arguments occurred outside the jury's presence. Moreover, most of the arguments between Coe and the Court were limited to differences of opinion over how to examine witnesses or interpret the Federal Rules of Evidence. Thus, unlike the district court in *Singer*, 710 F.2d at 436, the judge here did not help the government try its case or "inject[ ] himself into the trial throughout the entire proceeding."

To the extent that the judge's comments were sarcastic or disparaging, they were directed towards Coe, not the defendants.

Despite this, however, Coe remained a zealous, if not overzealous, advocate for her client. The judge showed no bias against any of the defendants or belief in their guilt. In fact, the jury acquitted Coe's client, Gilbert Dowdy, of nine of the fourteen counts submitted to it and acquitted Sam Dowdy completely. And finally, the Court issued three curative instructions to the jury concerning the arguments—two during trial, Trial Transcript Vol. XV at 62–64 and XIX at 58–60, and one in the final jury instructions. Government Addendum at 1–3. All three of the instructions reminded the jurors that confrontations between lawyers and the court should not have any effect on their determination of the defendants' guilt or innocence. Under all the circumstances, we reject the defendants' claim that the confrontations between Coe and the District Court deprived them of a fair trial.

▮ Our conclusion that the defendants were not denied a fair trial by the confrontations between Coe and the Court leads us also to reject their claim that they were prejudiced by the Court's failure to grant their motions for severance on the same ground. If anything, the bickering between Coe and the Court served to accentuate the differences between the defendants and actually may have helped Baker and Turner. The defendants sat at separate tables, so it is unlikely that the jurors viewed the defendants and their lawyers as a unified team. Moreover, given Dowdy's acquittal on nine charges, it is difficult to see how the Court's and Coe's confrontations prejudiced anyone, much less Dowdy's co-defendants.

## II.

All of the defendants also argue that their conspiracy convictions must be reversed because the jury returned inconsistent verdicts concerning the object of the

---

1. Dowdy also claims that Coe's actions denied him the effective assistance of counsel. We decline to consider this issue. Claims of ineffective assistance of counsel are normally not cognizable on direct review because of the need to develop facts not available from the trial record. This is particularly true where, as here, the issue was not raised below. See, *e.g.*, *United States v. Blackman*, 904 F.2d 1250, 1259–60 (8th Cir.1990). This claim is better addressed in collateral proceedings under 28 U.S.C. § 2255.

conspiracy. The indictment alleged a single conspiracy to distribute cocaine and cocaine base. On special verdict forms, the jury found Dowdy guilty of conspiring to distribute cocaine, Turner guilty of conspiring to distribute cocaine base, and Baker guilty of conspiring to distribute both. The defendants claim that these verdicts indicate that the jury found three conspiracies, each with different objects, instead of the single conspiracy alleged in the indictment and upon which it was instructed. For this reason, they claim that the verdicts improperly varied from, or constructively amended, the indictment.

■■■ The verdicts did not amend or vary from the indictment. The indictment charged the defendants with conspiring to distribute cocaine or cocaine base. Each of the defendants was found guilty of conspiring to distribute at least one of these substances. This Court has consistently held that where an indictment charges defendants with conspiring to distribute one or more drugs, only one of the drugs needs to be proved. See, *e.g., United States v. Klein*, 850 F.2d 404, 406 (8th Cir.), *cert. denied*, 488 U.S. 867, 109 S.Ct. 173, 102 L.Ed.2d 143 (1988). Moreover, the fact that the jury concluded that each defendant handled different combinations of drugs does not mean that there was not one overall conspiracy to distribute cocaine-related products. As we stated in *United States v. Regan*, 940 F.2d 1134, 1135 (8th Cir.1991) (citation omitted), "[t]he existence of a single agreement can be inferred when the evidence reveals the participants shared a common aim or purpose and mutual dependence and assistance existed." See also *United States v. Roark*, 924 F.2d 1426, 1429–30 (8th Cir.1991). The jury's guilty verdicts reflect its conclusion that the defendants participated in different ways in one overall conspiracy. We will not disturb that conclusion.

### III.

As a second ground for reversing their conspiracy convictions, Dowdy and Turner claim that the District Court erred in answering a jury question. During its delib-

erations, the jury asked the Court whether one of the defendants had to be linked to a conspiracy proved to exist in early 1981. The Court responded:

> The answer to your ... question is a qualified "yes." In other words, you must be satisfied that the conspiracy alleged was in existence or came into existence in or about early 1981. The proof need not establish with certainty the exact date of the alleged offense. It is sufficient if the evidence in the case established beyond a reasonable doubt that the offense was committed on a date reasonably near the date alleged.

The defendants claim the Court's response misstated the law and impermissibly amended, or varied from, the indictment.

■■■ The government did present evidence, via Jay Flott's and Carolyn Tanner's testimony, that a conspiracy involving Dowdy came into existence in early 1981. Even without this evidence, however, the Court's response would still not be erroneous. It has long been the law of this Circuit that "a variance between the date in the indictment and the proof is not fatal if the proof shows that the acts charged were committed on a date within the statute of limitations and prior to the return date of the indictment, as long as the date was not a material element of the crime charged." *United States v. Joyner*, 539 F.2d 1162, 1164–65 (8th Cir.), *cert. denied*, 429 U.S. 983, 97 S.Ct. 499, 50 L.Ed.2d 593 (1976) (citations omitted). Time is not a material element of a conspiracy charge. Thus, the District Court did not err in answering the jury's question, except possibly in defendants' favor.

### IV.

■■■ Next, Turner argues that his conspiracy conviction is supported by insufficient evidence. After reviewing the evidence in the light most favorable to the government, we reject this claim. Turner's participation in the conspiracy was not so extensive as Dowdy's or Baker's. Once the government has proved the existence of the conspiracy, however, only slight evidence is needed to connect a particular defendant to

the scheme. See, *e.g., United States v. Lee,* 743 F.2d 1240, 1250 (8th Cir.1984). Evidence linking Turner to the conspiracy included Lewis Smith's testimony that Turner worked for Baker in his drug business, Trial Transcript Vol. V at 25, and Terry Boydston's testimony that it was his understanding that Baker resupplied Turner with cocaine base when his supply ran out. Trial Transcript Vol. X at 22–23. This evidence indicates the government met its burden of connecting Turner to the conspiracy.[2]

### V.

Turner claims that he is entitled to a new trial because he did not knowingly and intelligently waive his Sixth Amendment right to his counsel's being present during portions of eight days of the trial. On the first day of trial, during the voir dire of the jury, Turner's counsel, Robert Duncan, asked for permission to be excused for the afternoon session. The following discussion occurred in the judge's chambers immediately after this request:

> MR. DUNCAN: My client has filed a formal waiver of being present and me being present during certain proceedings. I don't have any interest in the motions they are talking about and I have no problems with the questionnaire and what their answers are. And I will give somebody else my own voir dire strikes. Can I be excused this afternoon?
>
> THE COURT: Where is your client?
>
> MR. DUNCAN: He's right back here.
>
> THE COURT: Is it agreeable with you?
>
> MR. TURNER: It's okay with me.
>
> MR. DUNCAN: Can he be gone, too? Judge, here is my copy of the waiver.
>
> THE COURT: You understand, Mr. Turner, that the mere fact that your lawyer might not be here or you might not be here, this waiver does not include his own absence.
>
> MR. DUNCAN: I thought I did put it in there someplace.

> THE COURT: His own presence, yes. I am very reluctant to permit him to be absent. *It seems to me he can't even begin to appreciate the significance of that and what it might mean to him down the line. It spelled out here what it might mean for you to be absent,* but I am going to require him to be here.
>
> And, Mr. Turner, you understand according to the waiver that things might happen that would be detrimental to you at a time when Mr. Duncan wasn't here. And although I certainly have an obligation to protect everybody to a certain extent, I cannot guarantee you I will be in a position to point those things out if Mr. Duncan isn't here.
>
> MR. TURNER: Yes, that's all right.
>
> THE COURT: You are agreeable to his not being here?
>
> MR. TURNER: I agree to that, but you say I have to be here?
>
> THE COURT: Yes.
>
> MR. TURNER: That's no problem.

Government Addendum at 9–10 (emphasis supplied).

> The waiver, signed by Turner, stated:
> 1. That this Defendant has been fully advised of his rights to the effective representation of counsel.
> 2. That the Defendant has conferred with his counsel, Robert G. Duncan, regarding what evidence will be offered against him in the trial of this case.
> 3. That the Defendant, Robert Turner is aware that much of the evidence to be presented in this case pertains to financial matters of Gilbert Dowdy, Rodney Miller, and others, but not this Defendant.
> 4. That the Defendant is aware that he has the right to have his counsel present during the presentation of all of the testimony of this cause, but is aware that ... much of the testimony consist[s] of matters upon which his counsel would have no cross-examination.
> 5. That the Defendant, Robert Turner is aware that if his counsel is not present in the courtroom [and] that if any testi-

---

**2.** The summary of the evidence at trial contained in the government's brief is unusually

clear, intelligible, and comprehensive. We commend counsel for an outstanding job.

mony that is prejudicial to him is introduced that no objection could be made thereto, no cross-examination made thereof and so there would be no one in the courtroom protecting his interests. 6. That Robert Turner has no objection to his counsel being absent during those portions of the proceeding, including the presentation of evidence, to which his counsel determine[s] that his presence is not essential in the protection of the rights of the Defendant, Robert Turner and that Robert Turner does hereby specifically and particularly waive the assistance of counsel, and his own presence if approved by the Court, during such periods.

Government Addendum at 7–8. During the times that Duncan was not present, Turner had substitute counsel, usually one of his co-defendants' lawyers.

■ This is not a claim of ineffective assistance of counsel, with respect to which a close inquiry must be made into whether defendant was prejudiced. This is a claim that Turner had no lawyer of his own at all on parts of eight trial days. In such a situation, prejudice is presumed, or, to put it in plain words, prejudice need not be shown. See *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). A defendant is entitled to counsel at every critical stage of the proceedings against him, and the trial is the paradigmatic critical stage. The right to counsel can be waived, of course, but the waiver must be knowing and intelligent, and it is appropriate for proceedings to determine waiver to be conducted by the judge in open court. *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). This was not done here.

■ We conclude that Turner's waiver was nevertheless knowing and intelligent, and therefore legally effective. The Court did examine him in open court and determined that he was agreeable to the arrangement being proposed. In addition, the Court observed that "[i]t spelled out here [referring to Turner's written waiver] what it might mean for you [counsel] to be absent...." Government Addendum at 10. The Court did not examine Turner on the possible consequences of his decision, but the written waiver, signed by Turner, recited that he had "been fully advised of his rights to the effective representation of counsel," Government Addendum at 7, and listed further respects in which counsel's absence might disadvantage Turner. Defendant does not claim that he was misled or that the events recited in the written waiver did not occur. His argument, rather, as we understand it, is simply that his waiver is ineffective because the Court did not personally go over with him the possible consequences of counsel's absence. This of course would have been the preferable procedure. Indeed, the Court would have been well within its rights to refuse counsel's request to be absent. We consider it extraordinary for a lawyer, with or without the consent of his client, to absent himself from a trial. The question here, however, is the appropriate disposition of this conviction, and we are not persuaded that Turner received anything different from what he himself had agreed to. He was of age and competent. His decision was voluntary. We do not believe that the Constitution requires us to relieve him of its consequences. In effect, the Court, instead of examining Turner itself, satisfied itself that Turner's lawyer had properly advised him. We believe this is constitutionally sufficient.[3]

## VI.

Dowdy claims that insufficient evidence supports his conviction on two counts for money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i). Specifically, he claims that the government did not prove beyond a reasonable doubt that he knew the source of the funds was illegal or that either of the transactions was designed to conceal the nature, source, or ownership of the funds.

■ The money-laundering counts arose from Dowdy's purchase of a building at 19 East Armour in Kansas City, Mis-

---

**3.** We hold that the other claims raised by Turner are without merit.

souri, and his later renovation of it. Although the government did not directly prove that the money Dowdy used to pay for the building came from drug sales, it was reasonable for the jury to infer this from the evidence. See *Blackman*, 904 F.2d at 1257. There was extensive testimony about Dowdy's drug operations. From 1983 to 1989, Dowdy's expenses exceeded his income by over $657,000. Dowdy made over $600,000 in payments on the building and for its renovation in cash. Similarly, while the seller and the renovation contractors dealt with Dowdy directly concerning the building, this does not mean the transactions were not designed to conceal Dowdy's drug proceeds. Dowdy was not publicly known as the owner of the building. The deed to the building was held by a corporation formed by a lawyer hired by Dowdy's lawyer, an arrangement surely designed to make it difficult for any outsider to connect Dowdy with the corporation. As we stated in *United States v. Sutera*, 933 F.2d 641, 648 (8th Cir.1991), "the money laundering statute does not require the jury to find that [the defendant] did a good job of laundering the proceeds." We affirm Dowdy's convictions for money laundering.

### VII.

Baker also makes an insufficiency-of-the-evidence argument. He claims that the government did not prove beyond a reasonable doubt that he distributed cocaine base or possessed cocaine base with the intent to distribute it. Sufficient evidence supports the jury's verdict of guilt on the distribution count. Eric Burgin identified Baker as the person who negotiated the sale in a telephone conversation recorded by the government and testified that Baker was in the car that dropped Turner off to deliver the cocaine base. Apparently, the jury rejected Baker's expert's testimony that the voice on the tape recording was not his. The jury was free to disregard this testimony. Moreover, the fact that Burgin originally identified the person on the telephone as Turner, not Baker, but later changed his mind, does not mean his testimony was inherently incredi-

ble. Again, the jury apparently believed—and was entitled to believe—that the later identification was the correct one.

Sufficient evidence also supports Baker's conviction for possession with intent to distribute cocaine base. During a search of his girlfriend's mother's house, the police found Baker lying in bed with his girlfriend and their baby. At the foot of the bed, the police found a jacket with a plastic pouch containing cocaine and cocaine base in the pocket. Although the pouch did not have any fingerprints on it, it was nevertheless reasonable for the jury to infer that the jacket was Baker's and that he had constructive possession of it and its contents.

### VIII.

Baker claims the District Court erred by refusing to instruct the jury that the mere existence of a buyer-seller relationship is insufficient to prove a conspiracy. Although this is a correct statement of the law, see, *e.g., United States v. Prieskorn*, 658 F.2d 631, 633 (8th Cir.1981), the District Court did not err in refusing to instruct the jury on this defense theory. Baker was entitled to an instruction reflecting his theory of the case only if the evidence supported it. Here, the evidence did not.

From as early as 1986 through 1989, Baker received large amounts of cocaine from Dowdy. Baker, in turn, distributed this cocaine to Turner and others through a so-called "crack house." It is true that the government presented no evidence of an agreement between either Dowdy and Baker, or Baker and Turner, concerning how much they would charge their customers, who their customers would be, or how they would make their sales. Nevertheless, the ongoing nature of these relationships, involving tremendous amounts of cocaine, indicates a conspiracy and distinguishes this case from *Prieskorn*, upon which Baker relies. In *Prieskorn*, we held that while sufficient evidence supported the defendant's conspiracy conviction, the district court committed re-

**498**

versible error by refusing his buyer-seller jury instruction. We stated that a reasonable juror could have believed that Prieskorn was merely a buyer because he made one purchase, knew only one of the alleged conspirators, and did not order the drugs he purchased. *Id.* at 636. In this case, no reasonable juror would have believed that Dowdy, Baker, and Turner were involved in only buyer-seller relationships.

## IX.

▮▮▮ Baker's final argument is that the District Court erred in imposing his punishment. He claims the Court erred in calculating his base offense level under the Sentencing Guidelines by attributing 15 kilograms of cocaine base to him. Since he did not object to this calculation below, we will reverse only if the District Court committed plain error. Vicky Nixon testified at trial that Baker received between one to five kilograms of cocaine a week beginning in early 1988 and ending in the fall of 1989. In addition, the presentence report stated that while Baker did not always sell his cocaine in the form of cocaine base, "he was fully aware that his coconspirators were doing so...." Report at 11. The District Court's reliance on this conclusion at sentencing was not plain error. Baker also disputes the $25,000 fine imposed by the Court, arguing that he is unable to pay it. We .affirm the assessment of the minimum statutory fine. The District Court did not clearly err by concluding that Baker "would be able to pay the fine assessed in the Inmate Financial Responsibility Program while working in Un[ic]or[ ]." Sentencing Transcript at 24.

\*       \*       \*

Affirmed.