**UNITED STATES of America, Appellee,**

v.

**Curtis JACKSON, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Nina E. DONALDSON, Appellant.**

**Nos. 93–3976, 93–3978.**

United States Court of Appeals, Eighth Circuit.

Submitted May 11, 1994.

Decided July 8, 1994.

Larry C. Pace, Kansas City, MO, argued, for appellant Jackson.

Joseph W. Gibson, Miami, FL, argued, for appellant Donaldson.

E. Eugene Harrison, Kansas City, MO, argued, for appellee.

Before LOKEN, Circuit Judge, BRIGHT, Senior Circuit Judge, and HANSEN, Circuit Judge.

BRIGHT, Senior Circuit Judge.

## I. INTRODUCTION

Curtis Jackson and Nina E. Donaldson appeal following their jury-rendered convictions on a one-count indictment charging them with conspiracy to possess with intent to distribute, and distribution of, cocaine and cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846. Jackson and Donaldson allege various trial errors. We affirm.

## II. BACKGROUND

A federal grand jury indicted seven persons, including George Walters, Dorrel Ashley, Maria Simmons, Georgia Jackson, Adams Robbins, Sr., Curtis Jackson and Nina Donaldson, on March 25, 1992, for a single count of conspiracy to possess with intent to distribute and distribution of cocaine and cocaine base. We limit our discussion of the facts to Curtis Jackson's and Donaldson's involvement in the conspiracy.

Walters ran the organization, which trafficked in cocaine powder from New York chiefly to Junction City, Kansas. There, other conspiracy members cooked the powder into cocaine base (crack) for distribution.

Donaldson, Walter's live-in girlfriend and the mother of his two children, carried the cocaine beginning in late 1989 or early 1990 from New York through Kansas City International Airport and on to Manhattan (Kansas) Airport and Junction City. Donaldson also delivered cocaine once to South Carolina for Walters, where another conspiracy member, David McLean, sold the drugs.

Curtis Jackson met Walters in Junction City in 1989. From mid–1990 through July, 1991, Jackson bought cocaine from Walters to sell. At the time of his arrest, Jackson owed Walters approximately $17,000.00 for the cocaine.

Four of the defendants, Walters, Ashley, Simmons and Georgia Jackson, pled guilty and testified at the trial of the remaining three defendants. The government deported McLean. A jury subsequently found Curtis Jackson, Donaldson and Robbins, Sr., guilty as charged on November 11, 1992, after an eight-day trial.[1] The district court[2] sentenced Donaldson within the sentencing guideline range to sixty months (five years) imprisonment; Jackson received a sentence

---

1. In the case of Robbins, Sr., however, this court subsequently affirmed that part of the district court's order granting the motion for new trial, based upon the admission of evidence obtained in violation of the fourth amendment, and reversed that part of the order granting the motion for judgment of acquittal. *United States v. Robbins,* 21 F.3d 297 (8th Cir.1994).

2. The Honorable Joseph E. Stevens, Jr., Chief Judge, United States District Court for the Western District of Missouri, Western Division.

within the guideline range of one hundred and sixty-eight months (fourteen years).

## III. DISCUSSION

### A. Nina Donaldson

■ Donaldson contends that the district court abused its discretion by unduly limiting her cross-examination of certain Government witnesses, specifically, Linda Mendez–Sanchez and Bernard Mollahan. Donaldson states that she was precluded from cross-examining Mendez–Sanchez "as to the silence of [telephone] records regarding point to point calls," and from cross-examining Mollahan "as to whether there was any documentary proof that the Appellant had knowledge of those telephone numbers . . . ." Br. of Appellant Donaldson, at 11.

Donaldson does not cite any specific instance where she was in fact precluded from cross-examining the witnesses. In any event, after being granted permission to voir dire Mendez–Sanchez, the district court properly sustained the Government's objections to Donaldson's questions that exceeded the scope of determining foundation. Further, once the court admitted the telephone records, defendant had an opportunity to cross-examine the witnesses. Donaldson's argument thus lacks merit.

■ Next, Donaldson argues for the first time that the district court improperly commented on the evidence in the presence of the jury, resulting in plain error. According to Donaldson, "the trial judge essentially took on the role of unimpartial referee in the disputes between the Appellant and the Government. The trial judge vouched for the recollection of the Government's counsel, who likesame vouched for the testimony of the government witnesses." Br. of Appellant Donaldson, at 13 (citations to trial transcript omitted).

The district court did not directly comment on the evidence but ruled on objections; these rulings sometimes resulted in confrontations between Donaldson's attorney and the court. *See infra*, at 399–401 n. 3. Further, some of the allegedly improper comments occurred out of the jury's presence. Accordingly, no plain error occurred.

■ Next, Donaldson contends that the district court abused its discretion based upon the manner in which it conducted the trial and the confrontations that occurred between the court, defense counsel and the Government's attorney.[3] She contends that

---

3. We cite for illustrative purposes some of the more "heated" interactions that took place between the district court and Donaldson's attorney, Mr. Gibson, within the hearing of the jury:

> BY MR. GIBSON:
> Q Was the service disconnected for telephone number 718–779–0365 by your records that you brought to Court today, yes or no?
> MR. HARRISON (Prosecutor): Your Honor, that question has already been asked and answered.
> THE COURT: Sustained.
> MR. GIBSON: With all due respect, if I may approach.
> THE COURT: No.
> MR. GIBSON: Not for the record?
> THE COURT: This is it. We have really beat this quite to death. You are repeating yourself. This is at least the third time that question has been asked of this witness.
> MR. GIBSON: Humbly, the Court has commented on the evidence and I remember it differently than this honorable court.
> THE COURT: The record will reflect that.
> Tr. (Vol. IV), at 132.
> MR. HARRISON: At this time, Your Honor, the Government would offer Exhibit A–11, Analysis, into evidence.
> THE COURT: All right, Mr. Pace.

> MR. PACE (Attorney for Jackson): Could we just at least take a look to make sure it's the same one we saw before, Judge?
> THE COURT: Yes.
> MR. PACE: I have no objection, Your Honor.
> THE COURT: Mr. Bortnick.
> MR. BORTNICK (Attorney for Robbins, Sr.): I have no objection, Your Honor.
> THE COURT: Mr. Gibson.
> MR. GIBSON: Your Honor, at this time I will stand mute.
> THE COURT: All right. Do you have an objection? The exhibit has been offered. Do you have an objection to it?
> MR. GIBSON: At this time I stand mute for the record.
> THE COURT: I want to know if you have an objection to the exhibit.
> MR. GIBSON: Am I compelled to object or not?
> THE COURT: The exhibit has been offered. I want to know what [sic] you have an objection to it.
> Hearing none, I will assume there is no objection and Exhibit A–11, Analysis, will be admitted.
> Tr. (Vol. IV), at 139–140.

reversal is warranted, citing *United States v. Singer*, 710 F.2d 431, 437 (8th Cir.1983) (en banc).

The Government argues that Donaldson's reliance on *Singer* is misplaced and that under *United States v. Turner*, 975 F.2d 490, 493 (8th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1053, 122 L.Ed.2d 360 (1993), she was not prejudiced or deprived of a fair trial. According to the Government, "the 'combative environment' here did not rise to a quality warranting any contempt citations as was the case in *Turner*." Br. of Appellee, at 24. Moreover, the district court, sensitive to the situation, gave the jury a "Cautionary Instruction" pertaining to the conduct of the court and the attorneys to prevent any potential threat to the fairness of the trial.[4]

> MR. HARRISON: At this time, Your Honor, the Government would offer Exhibit A–11, Times Analysis, into evidence.
> MR. PACE: No objection.
> MR. BORTNICK: No objection.
> THE COURT: Mr. Gibson.
> MR. GIBSON: May I stand mute, Your Honor.
> THE COURT: No, just tell me whether you have an objection or not.
> MR. GIBSON: I just don't think I can effectively do my job.
> THE COURT: You are then waving an objection.
> MR. GIBSON: Yes, Your Honor.
> THE COURT: —On behalf of your client.
> MR. GIBSON: I don't wish to harm Nina Donaldson more than I have.
> THE COURT: Come now, Mr. Gibson. Hearing no objection, there is none and the exhibit is admitted as Plaintiff's Exhibit A–11, Times Summary.

Tr. (Vol. IV), at 141–142.

> MR. HARRISON: No, this is the one with the wheel.
> MR. PACE: I have no problem with the wheel.
> MR. BORTNICK: I don't have any problem with that.
> THE COURT: Mr. Gibson.
> MR. GIBSON: Your Honor, I have nothing to say.
> THE COURT: Pardon me.
> MR. GIBSON: I have nothing to say about the wheel at all.
> THE COURT: No objection.
> MR. GIBSON: Nothing to say.
> THE COURT: Do you have any objection?
> MR. GIBSON: Do I have to make one, Judge?
> THE COURT: If you have one.
> MR. GIBSON: Then I don't have to say anything.
> THE COURT: You don't have any objection. All right, the exhibit is admitted.

Tr. (Vol. IV), at 145.

> THE COURT: Ladies and gentlemen, it is a rule of law that an examiner is supposed to have a good faith basis for believing—
> MR. GIBSON: Most respectfully—
> THE COURT: You be quiet—for believing a fact implied in a question. There is no evidence in this record that either Walters or Ashley smoked crack. The only evidence is to the contrary. Those last two questions are stricken and you are instructed to disregard them.

Tr. (Vol. VI), at 74.

> MR. HARRISON: Let me show you what has been marked as—
> MR. GIBSON: Most respectfully, I thought this was that document, not another one. I am in Cross Examination.
> THE COURT: He is apparently voir diring for purposes of laying a foundation for an objection.
> MR. GIBSON: For that document—that document.
> THE COURT: Perhaps the document pertains to his objection.
> MR. GIBSON: Which humbly—
> THE COURT: Don't "humbly" me. Just tell me what your concern is.
> MR. GIBSON: One document is different from another one. I thought we were staying with one document.

Tr. (Vol. VII), at 226.

4. The "Cautionary Instruction" provided, in pertinent part:

> THE COURT: Have a seat, folks. Ladies and gentlemen, some concern has been expressed in one of my rulings or statements yesterday I might have said to you or you might have inferred from what I said a contested fact had been proved. That was not my intention.
> As I told you during the preliminary instructions the determination of facts is entirely up to you and nothing I say or do during the trial should be taken by you as an indication of what I think the facts ought to be or certainly not what the facts are. That again is up to you.
> As you probably know by now, just from your service in this case, there are as many styles of conducting the prosecution or the defense of a criminal case as there are prosecutors or defense lawyers.
> In like manner, there are as many styles of judging a trial as there are trial judges. If there were not something to bring together those styles and the points of view they represent, then the trial of a lawsuit would be chaotic and not the orderly and deliberate proceeding it is designed to be and usually is.
> . . . .
> It is when that evenhanded and consistent conformance with or application of the rules is

We have carefully scrutinized the trial transcript. From our review, we note the following: both the Assistant U.S. Attorney and Donaldson's counsel made nitpicking objections; many of Mr. Gibson's objections were general—leading, improper form of the question, relevancy—and were addressed to preliminary matters which in no way involved disputed facts or facts material to the disposition of the case; Mr. Gibson frequently made statements rather than asked questions, to which the district court repeatedly admonished counsel not to do, and Mr. Gibson's continuation of this procedure aroused the ire of the court; a similar form of cross-examination by the prosecutor, which Mr. Gibson, unlike the Government, did not object to at the time, did not evoke the same irritation from the bench.

In our view, *Singer* is inapposite. There, we addressed whether the district court had so far injected itself into the trial as to have deprived the defendants of a fair trial by giving the jury the impression that the court favored the prosecution. In a six-to-three decision, this court answered in the affirmative, based upon the district court's interventions which were designed

> to clarify government testimony, to help government counsel, to indicate to govern-

ment counsel when he should or should not make objections, to instruct government counsel on how to make his evidence more intelligible, to suggest to him when he should stop the examination of a witness, to indicate to him what he should write on a blackboard in order to illustrate a point to the jury, and the like. In addition, on numerous occasions the court took over the questioning of government witnesses in order to make sure that the somewhat complicated facts of this case were clearly explained.

*Id.*, 710 F.2d at 436.

The trial here more closely approximates the circumstances presented in *Turner*, 975 F.2d at 493. The conduct in that case, however, resulted in a significantly more hostile trial environment, where the lawyer for one of the co-defendants received four contempt citations due to confrontations with the district judge. *See id.* Further, although the trial of Donaldson, Jackson and Robbins, Sr., lasted only eight days, Judge Stevens did not try the Government's case or improperly interject himself into the trial proceedings. While the district court may have used sharp language in rejecting some of attorney Gibson's objections, the court's rulings in most of

---

not followed that the fairness of the result might be called into question. It would not be realistic for me to tell you that the conduct of this trial, either by counsel or the court, has been usual and unremarkable. Several times during the trial—at least once during the trial—I instructed you, as I instruct you now, you must not allow any of the interchanges between Court and any of the counsel or anything the Court does or says to affect your judgment in this case in any way whatsoever. Nor should you allow the conduct of counsel for the Government or for any one defendant to affect your judgment as to any or all of the other defendants or the Government.

I acknowledge to you that there have been spirited exchanges between the Court and counsel in this case—more so than is usual.

I know that on the Court's part this has been because of a determination to provide the United States and all three defendants with the fairest trial possible under the rules and is in no way because of any predisposition or previously formed opinion of the Court.

If I appeared angry at any time, I apologize for that. If it was anger it was born out of my anxiety the rules be followed and that all par-

ties receive the fairest trial possible. It was not in any way related to the question of the guilt or innocence of the defendants or any one of them. Nor should it affect your decision in any way.

With respect to the conduct of counsel, I am prepared to advise you that each defendant is being defended with vigorous zeal and in the style of each defending counsel unique to him. It may be the case that differences of style or even disagreements what the law is or the rules are have brought the Court into dispute at one time or another with counsel. I tried to minimize your exposure to those disputes but that has not always been possible.

The critical important thing for you to remember is those disputes have nothing to do with and should in no way be considered by you in reaching the conclusion you are charged with reaching in this case.

This is not a customary instruction. I give it because of my genuine concern that you make your decisions solely on the basis of the evidence and the law and not because of any diversion that may have occurred during the trial.

Tr. (Vol. V), at 7–10.

the questioned instances fell within the court's discretion under the Federal Rules of Evidence.[5] *See United States v. Lueth,* 807 F.2d 719, 729 (8th Cir.1986). Further, the court's rulings on substance did not amount to plain error.

We also note that a majority of the disputes between counsel and the court occurred outside of the jury's hearing. Moreover, the judge specially instructed the jury during the course of the trial, after the tenor of the interactions apparently had escalated, that his comments and any disputes between counsel and the court did not reflect on the guilt or innocence of the parties and could not be so considered by the jury. *See ante,* at 400–401 n. 4. We cannot say on this record that Donaldson was deprived of a fair trial. *United States v. Scott,* 26 F.3d 1458, 1465 (8th Cir.1994). Accordingly, Donaldson's claim must fail.

■ Lastly, Donaldson argues that the district court abused its discretion upon allowing the Government to introduce into evidence testimony about her brother, Fidel Donaldson. She characterizes the evidence as irrelevant, inflammatory and an attack on her character. According to Donaldson, because her brother allegedly dealt drugs, testimony associating her with Fidel allowed the jury to convict her based solely on their association.

Donaldson fails to demonstrate how the testimony pertaining to her brother's association with the conspiracy and drug dealing was either irrelevant or that its prejudicial effect outweighed its probative value. The testimony elicited by the Government was in fact relevant to Donaldson's involvement in the conspiracy as a drug courier, and did not rise to the level of unfair prejudice.

**B.  Curtis Jackson**

■ Jackson contends that the district court committed prejudicial error by failing to timely instruct the jury, based on his several requests, that it could only consider evidence that arose during the existence of the alleged conspiracy. Due to the lack of timely instruction, Jackson argues that "[i]t is clearly a distinct possibility that the jury established Appellant Jackson's membership in the alleged conspiracy based upon the testimony of pre or post-conspiracy activity." Br. of Appellant Jackson, at 13.

Pertinent to the issue, the district court gave the following limiting instruction to the jury at the end of the trial, which almost verbatim tracks the language of Eighth Circuit Instruction 5.06I (West 1989):

THE COURT: This is No. 18.

If you have found beyond a reasonable doubt that a conspiracy existed and that the defendant was one of its members, then you may consider acts knowingly done and statements knowingly made by defendant's co-conspirators during the existence of the conspiracy and in furtherance of it as evidence pertaining to the defendant, even though they were done or made in the absence of and without the knowledge of the defendant whose guilt or innocence you are then considering. This includes acts done or statements made before the defendant had joined the conspiracy for a person who knowingly, voluntarily and intentionally joined an existing conspiracy is responsible for all of the conduct of the co-conspirators from the beginning of the conspiracy.

---

5. See, for example:

**Rule 103.  Rulings on Evidence**
(c) **Hearing of jury.** In jury cases, proceedings shall be conducted, to the extent practicable, so as to prevent inadmissible evidence from being suggested to the jury by any means, such as making statements or offers of proof or asking questions in the hearing of the jury.

**Rule 611.  Mode and Order of Interrogation and Presentation**
(a) **Control by court.** The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

Acts and statements which are made before the conspiracy began or after it ended are admissible only against the person making them and should not be considered by you against any other defendant.

Instruction No. 18, Br. of Appellee, Add. at 3 (emphasis added).[6]

■ The district court's decision when to give a limiting instruction requires an exercise of discretion that we will not disturb absent an abuse of that discretion. *Cf. United States v. Graham*, 548 F.2d 1302, 1310 n. 4 (8th Cir.1977) (reserving a decision whether, and if so, under what circumstances failure to give a requested limiting instruction at the time an extrajudicial statement of an alleged co-conspirator is offered into evidence constitutes reversible error). Jackson fails to direct the court's attention to any testimony that the jury could have improperly used to establish his participation in the conspiracy. In light of the above considerations, we reject Jackson's claim.

■ Jackson also argues that the confrontations between co-defendant Donaldson's attorney, the Assistant U.S. Attorney and the district court deprived him of his right to a fair trial, and that the district court improperly assisted the Government in questioning witnesses. Jackson had sought a severance both at pretrial and during the trial, which he now contends the district court erroneously denied. Jackson sets out numerous examples of the "magnitude of the problem," accompanied by citations to numerous additional instances. Br. of Appellant Jackson, at 16–22. This conduct, Jackson argues,

" 'place[d] the defense at a disadvantage in the eyes of the jury by casting the prosecutor in the rule [sic] of underdog . . . and suggest to the jury that he favored the government's position.' " Br. of Appellant Jackson, at 20 (quoting *Singer*, 710 F.2d at 436).

We conclude from our review of the excerpts set out by Jackson (relating to the confrontations and the district court's purported assistance to the Government) and of the entire transcript, that, as discussed previously, *ante*, at 402, no plain error exists prejudicial to Jackson. Moreover, as we have already noted, the district court in this case gave the jury a "Cautionary Instruction" pertaining to the conduct of the court and the attorneys. *See ante*, at 400–401 n. 4. Consequently, we conclude that the district court did not abuse its discretion by denying Jackson's motion to sever.

## IV.  CONCLUSION

Based upon the foregoing discussion, we affirm both defendants' convictions.

---

6. During proceedings held outside the presence of the jury, the district court responded as follows to defendant's request for a limiting instruction in accord with the second paragraph from Eighth Circuit Instruction 5.06I (identical to the second paragraph ultimately given in Instruction 18):

    THE COURT: Give it to Mr. Sebree. I intend to give such an appropriate limiting instruction at what I think is the appropriate time. I don't think this is it. We are in a conspiracy case and there are different features of the evidence that either come in or don't come in which will determine what my Bell finding is [presumably referring to *United*

*States v. Bell*, 573 F.2d 1040, 1044 (8th Cir. 1978) (setting forth procedure for district courts in the future when admissibility of a co-conspirator's statement is at issue) ] and I think will also determine the appropriateness of the extent of this instruction.

    I think under the circumstances you are entitled to somehting [sic] like this, but under other circumstances I think the Government would appropriately object to that. And I just have to wait and see, but I appreciate your putting it on the record and we will do what we can.

Tr. (Vol. IV), at 3.