**UNITED STATES of America**

v.

**Joseph GRANDE.**

Civil No. 96–6536.
Criminal No. 88–00003–17.

United States District Court,
E.D. Pennsylvania.

Nov. 18, 1996.

David E. Fritchey, AUSA, Philadelphia, PA, for Government

Scott F. Griffith, Philadelphia, PA, for defendant

## MEMORANDUM AND ORDER

VAN ANTWERPEN, District Judge.

### I. INTRODUCTION

On November 19, 1988 Joseph Grande was convicted of RICO and RICO Conspiracy, 18 U.S.C. §§ 1962(c), 1963. The jury specifically found him guilty of eight RICO predicate acts consisting of two murders, two attempted murders and four extortions. Post verdict motions were denied. *United States v. Scarfo*, 711 F.Supp. 1315 (E.D.Pa.1989). Subsequently, Mr. Grande was sentenced to a forty year term of imprisonment on May 3, 1989. Mr. Grande appealed his conviction, *United States v. Pungitore*, 910 F.2d 1084 (3d Cir.1990); it was affirmed and his petition for certiorari was denied. 500 U.S. 915 (1991).

Mr. Grande now petitions this court for habeas corpus relief pursuant to 28 U.S.C. § 2255. He claims that he was denied the right to counsel during a critical stage of the trial proceedings, thus amounting to both a Sixth Amendment violation and *per se* ineffective assistance of counsel. We disagree.

## II. DISCUSSION

### A. Standard

The right to have the assistance of counsel is provided for in the Sixth Amendment of the United States Constitution. This right has been deemed fundamental by the Supreme Court; it cannot be denied to the defendant absent waiver. *Johnson v. Zerbst,* 304 U.S. 458, 462, 58 S.Ct. 1019, 1022, 82 L.Ed. 1461 (1938). An indigent defendant who cannot afford to retain an attorney has an absolute right to have counsel appointed by the court. *Id.* at 463, 58 S.Ct. at 1022; 18 U.S.C. § 3006A; Fed.R.Crim.P. 44(a). One element of this basic guarantee is the right to counsel of choice, *Powell v. Alabama,* 287 U.S. 45, 53, 53 S.Ct. 55, 58, 77 L.Ed. 158 (1932); however, this right is not absolute. *Wheat v. United States,* 486 U.S. 153, 159, 108 S.Ct. 1692, 1697, 100 L.Ed.2d 140 (1988); *United States v. Voigt,* 89 F.3d 1050, 1074 (3d Cir.1996). Moreover, this right may be waived, so long as the waiver is done voluntarily, knowingly and intelligently. *Faretta v. California,* 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975); *Johnson v. Zerbst,* 304 U.S. at 464–65, 58 S.Ct. at 1023; *United States v. Moskovits,* 86 F.3d 1303, 1306 (3d Cir.1996). This is traditionally accomplished via an on-the-record colloquy with the defendant whereby the court affirmatively determines the voluntary, knowing and intelligent nature of the waiver. *Faretta,* 422 U.S. at 835, 95 S.Ct. at 2541.

In situations where counsel is not waived entirely, the right to counsel is also viewed as the right to effective assistance of counsel. *McMann v. Richardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763 (1970) (*citing, inter alia, Powell v. Alabama,* 287 U.S. at 47, 53 S.Ct. at 56). The Supreme Court has set out a two-prong test to establish a claim of ineffectiveness of counsel. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). A petitioner must show both that: (1) his counsel's conduct was deficient, and "fell outside the wide range of professionally competent assistance" and (2) the petitioner was prejudiced as a result of that deficient conduct. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064; *United States v. DeRewal,* 10 F.3d 100, 104 (3d Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1544, 128 L.Ed.2d 196 (1994).

To satisfy the first prong, deficiency, a petitioner must show that his counsel's conduct fell below an objective standard of reasonableness. *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2064. In evaluating such a claim, we "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. at 2065. To show prejudice, a petitioner must show that there is a reasonable probability that there would have been a different outcome; that the deficient performance "deprived the defendant of a trial whose result is reliable." *DeRewal,* 10 F.3d at 104, *citing Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068.

However, the two prong test set out in *Strickland* does not apply where there are "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *United States v. Cronic,* 466 U.S. 648, 658, 104 S.Ct. 2039, 2046, 80 L.Ed.2d 657 (1984). Rather, in such cases prejudice will be presumed if, *inter alia,* counsel is denied at a critical stage of trial. *Id.* at 659, 104 S.Ct. at 2047. In these circumstances we will not inquire into counsel's actual performance at trial, but will presume the prejudice required for a constitutional violation. Certainly, though, the presence of counsel during the critical stages can still be waived, and in those cases, prejudice will not be presumed. *See Government of Virgin Islands v. James,* 934 F.2d 468, 473 (3d Cir.1991).

### B. Absence of Counsel During Trial

Mr. Grande focuses his petition on the absence of his appointed counsel, Mr. Berry, for a period during the beginning of the trial. He argues that the absence was longer than he expected, and that it denied him counsel during a critical stage of trial. This, he claims, is prejudicial per se under *Cronic.*

However, the facts simply do not support this claim. Mr. Grande had initially retained Mr. Edward Reif, Esq. as his counsel. On September 8, 1988 Mr. Grande indicated that he no longer possessed the funds for private counsel, and requested the appointment of Mr. Berry. *Transcript,* September 8, 1988 at 9–11. Mindful of the issues involved, we questioned both Mr. Berry and Mr. Grande about this decision, and permitted the government a further colloquy, as follows:

> The Court: Now, we have counsel who is standing here with you and as I understand it, you are agreeable with having this gentleman represent you. Is that correct? Do you feel that if he enters this case at this point in time, that there will be adequate time for him to represent you properly?
>
> Mr. Grande: Yes, sir. Yes.
>
> The Court: Are you fully satisfied—
>
> Mr. Grande: Yes, sir.
>
> The Court: —with that? Counsel do you feel you'll have enough time to—
>
> Mr. Berry: Yes, your honor.
>
> The Court: —handle the case?
>
> Mr. Berry: Yes.

*Transcript,* September 8, 1988 at 10.

Mr. Berry then informed the court that he was also set to begin trying a state homicide case in front of Judge Sabo the following week, and would therefore be absent for an amount of time at the beginning of the instant trial. Attorney Robert Simone, lead defense counsel, then stated that "we feel that we have a common interest in this case; all the defendants and all the counsel." *Id.* at 12. Several of the defense attorneys would be absent from the trial, which lasted fifty-three days, at some point or another; the attorneys and the defendants had therefore agreed to look after each others' interests. The transcript continues:

> Mr. Simone: ... Mr. Grande .. [is] satisfied to go without counsel and they also are satisfied because of just being appointed in the case' that they have no objection to proceeding recognizing that either I or one of my colleagues who will watch out for their interest. Did you hear what I said, Mr. Grande?

> Mr. Grande: Yes.
>
> Mr. Simone: Is that basically correct? ...

> \* \* \* \* \* \*

> The Court: ... You're agreeable with that, Mr. Joseph Grande?
>
> Mr. Grande: Yes, your honor.
>
> The Court: All right. I will then authorize the appointment of this gentleman to represent you....

*Id.* at 12–13.

Mr. Pichini, for the government, then requested to colloquy Mr. Grande, as follows:

> Mr. Pichini: Mr. Grande, My name is Louis Pichini and I'm going to ask you a few questions just to make sure that the retention of the attorney today is something that's gone your choice and it's free and voluntary and no one is forcing you to do that. The first question I want to ask you is, is anyone forcing you to trial today?
>
> Mr. Grande: No.
>
> Mr. Pichini: You originally were represented by another counsel. Is that correct?
>
> A: Yes.
>
> Q: All right. And, then it became your intention at one point to proceed in trial without counsel. Is that right?
>
> A. Yes.
>
> Q: And at this point, you are represented by Mr. Berry. Is that correct?
>
> A. Yes.
>
> Q: You have known since January of 1988, the time of the indictment, that you had a right to either counsel of your choice or if you could not afford counsel that counsel would be appointed for you as here today by the court. Are you aware of that?
>
> A: yes.
>
> Q: And no one has forced you to take Mr. Berry as counsel. Is that right?

*Id.* at 13–15.

At this point, Mr. Berry objected to the questions as beyond what was necessary. We pointed out then that the government's questions were very necessary to protect the record and ensure that Mr. Grande was

aware of his situation. Mr. Pichini continued:

Mr. Pichini: Mr. Grande, is it your free, knowing and voluntary choice to go to trial with Mr. Berry knowing that he has not—not as much time to prepare for trial than he would have if you had advised the Court earlier of your intention or need of Court-appointed counsel? Do you understand that?

Mr. Grande: yes.

*Id.* at 16.

Finally, we queried of Mr. Grande ourselves:

The Court: It's obvious to you as a matter of common sense that since he's coming in today he didn't have as much time to prepare as he would have if he had been appointed a month or two ago. You understand that?

Mr. Grande: I'm well satisfied, Your Honor.

The Court: Your're well satisfied notwithstanding all that. I'm satisfied.

    \*    \*    \*    \*    \*    \*

The Court: [Mr. Berry,] You're satisfied with the time that you have to prepare in this mater? I think you've already indicated—

Mr. Berry: I would, your honor. I'll be prepared. I'll be ready. I'll be here when I can. As soon as I finish this case, I'll be here. I have no other commitments that will prevent me from being here.

The Court: Okay. All right. All right. And, Joseph, you understand that he's going to be tied up in a murder case that may take several weeks, so you would be here without a lawyer sitting next to you for a couple of weeks. Do you understand that?

Mr. Grande: Yes, your honor.

The Court: And, things could arise that you would not understand in this courtroom. You understand that, don't you?

Mr. Grande: Yes, your honor.

The Court: And, I—I can't be your lawyer. Do you understand that?

Mr. Grande: Yes.

The Court: All right. Nevertheless, you're satisfied to have him represent you?

Mr. Grande: Yes.

*Id.* at 17–20.

After this lengthy inquiry, we felt assured that Mr. Grande was satisfied with the appointment of his new counsel and had knowingly and intelligently waived his presence for the first few weeks of trial.

The next day, September 9, 1988, Mr. Simone again brought up the fact that several of the attorneys would be absent from court during the trial. He discussed the possibility of signing a written waiver, and stated,

Judge, let me also say this, that all of the—I've spoken to all of the defendants and I've spoken to all of the lawyers. We are really working as a team and the lawyers are working on more than one defendant to help the other lawyers. So that at no time is anybody unrepresented in this case, because in every situation there's more than one person on every predicate offense. So any part of the case has to involve—if a lawyer wasn't here for the whole trial there would be one other lawyer—which is not going to take place, there would be one other lawyer, at least one other lawyer ad in many cases two, three, four, five, six lawyers that would be just as interested in that predicate offense and therefore, looking out for the interest of the person that is unrepresented.

*Transcript,* September 9, 1988 at 60–61.

The written waiver that Mr. Simone made reference to was given to us on September 13, 1988. It was titled "Waiver of Presence of Counsel", and stated the following:

Each of the undersigned Defendants hereby acknowledges that he has been advised of his right to have counsel present at all times during the pendency of the above proceedings. Defendants further acknowledge that due to the length of the trial herein, it may be necessary for counsel to absent themselves from court proceedings herein from time to time, whether for purposes related or unrelated to this matter. With the aforementioned knowledge, each of the undersigned Defendants hereby waives his right to have counsel present during the entirety of the proceedings and

agrees that, when his counsel is temporarily absent, his interests will be adequately protected by such counsel for other Defendants as are present during the proceedings on that date.

*Waiver* at 1.

Mr. Grande and his attorney, Mr. Berry, signed this waiver, as did all but one of the remaining defendants. *Id.* at 2–3.

It is abundantly clear to us that Mr. Grande voluntarily, knowingly, and intelligently waived the presence of his attorney during the trial. He did so first orally, and then via a written waiver. The reality of his situation could not have been made clearer to Mr. Grande, and he was repeatedly afforded the opportunity to object or raise questions about his attorney's presence. Despite all of these precautions taken on his behalf, Mr. Grande responded again and again that he was satisfied. To now express dissatisfaction with his attorney's absence is counter to the law.

In a very similar case, *United States v. Turner,* the Eighth Circuit considered this issue. Mr. Turner's attorney was absent during portions of eight days of trial. Before doing so, though, counsel obtained a written waiver from Mr. Turner, and presented the matter to the court on the record. Besides a written waiver of his attorney's presence, the defendant indicated orally that he was satisfied. *United States v. Turner,* 975 F.2d 490, 495–6 (8th Cir.1992), *cert. denied,* 506 U.S. 1082, 113 S.Ct. 1053, 122 L.Ed.2d 360 (1993). Further, "during the times that [counsel] was not present, Turner had substitute counsel, usually one of his co-defendants' lawyers." *Id.* at 496. The Circuit Court held that the written waiver was voluntary, knowing and intelligent, and the absence was therefore not prejudicial per se. In the case at hand, we went even further than merely a written waiver. We fully discussed the consequences with Mr. Grande, and colloquied both Mr. Grande and his attorney to satisfy ourselves that he was knowingly and intelligently waiving the presence of counsel.

This cases cited by Mr. Grande are inapposite. In both *Green v. Arn,* 809 F.2d 1257 (6th Cir.1987), *vacated on other grounds,* 484 U.S. 806, 108 S.Ct. 52, 98 L.Ed.2d 17 (1987),

and *Siverson v. O'Leary,* 764 F.2d 1208 (7th Cir.1985), the defendants specifically did not waive the presence of their attorneys. Because of this, their absence during a critical part of the trial was prejudicial per se. This is not the case at hand. Absence without waiver during a critical stage is wrongful absence and establishes a Sixth Amendment violation. However, nothing in either of these cases indicates that counsel cannot be waived by the defendant, provided that it is done knowingly and intelligently. When there is such a waiver, the absence is not wrongful and thus not per se prejudicial.

We therefore review Mr. Berry's absence pursuant to the *Strickland* standard. Mr. Berry was absent intermittently from the proceedings until November 1, 1988, admittedly a long time. However, this was a possibility made clear to Mr. Grande from the beginning. We stated that the other trial was just beginning and that it could be several weeks that Mr. Grande was without his specific attorney. *Transcript,* September 8, 1988 at 19. In addition, the waiver that Mr. Grande signed stated only that he waived the presence of his counsel; it did not place a time limit. At no time during the proceedings did Mr. Grande complain that his attorney should be present, as the defendant in *Green* did. Mr. Berry's waived absence was thus not deficient performance; there is no evidence that he would have been absent without such a waiver.

Mr. Grande has also not demonstrated any prejudice from Mr. Berry's absence. Other counsel who were present and available to cross-examine government witnesses chose not to do so because the other attorneys had covered all of the areas of attack. *See Transcript* October 15, 1988 at 126, 158. Indeed, the other attorneys followed through on Mr. Simone's promise to "watch out for their interest." For example, attorney Reif fully cross-examined government witnesses Thomas DelGiorno and Nicholas Caramandi about Mr. Grande's involvement in both of the murders with which he was charged. *Transcript,* October 15, 1988 at 19–23; November 1, 1988 at 25–29, 41–42.

Mr. Grande, quite simply, waived the presence of his attorney during trial in a knowing, intelligent, and voluntary fashion, and cannot now allege error. Having made his bed, Mr. Grande must now lie in it, and we do not believe that the Constitution affords him the easy escape hatch he seeks.

For the foregoing reasons, we will deny Mr. Grande's petition for relief pursuant to 28 U.S.C. § 2255.

An appropriate order follows.

### ORDER

AND NOW, this 18th day of November, 1996, upon consideration of defendant Joseph Grande's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2255, and the government's response thereto, it is hereby ordered that the same motion is DENIED.