# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-4035

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| Rafael Beltran-Arce, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: June 15, 2004
Filed: July 28, 2005

_____

Before SMITH, BEAM, and COLLOTON, Circuit Judges.

_____

SMITH, Circuit Judge.

A jury found Rafael Beltran-Arce guilty of several federal drug crimes alleged in a four-count indictment, and he was sentenced to 235 months' imprisonment. Beltran-Arce appeals the district court's refusal to grant a mistrial based on his allegation that the government was permitted to introduce improper expert witness testimony at trial. We affirm Beltran-Arce's convictions, but reverse and remand for resentencing.

I.

The issues presented in this appeal concern the trial testimony of Sergeant Langan of the Omaha Police Department. The government called Sergeant Langan

in its case-in-chief to provide expert testimony relating to drug conspiracies in the Omaha area and typical drug record-keeping procedures. Before permitting Sergeant Langan to testify, the district court conducted a hearing pursuant to Fed. R. Evid. 104(b).[1] Ultimately, over Beltran-Arce's objections, Sergeant Langan was permitted to testify as an expert regarding the modus operandi of local drug dealers. During his testimony, Sergeant Langan opined that much of the methamphetamine coming into Omaha originated in Mexico. The prosecution did not give Beltran-Arce proper Rule 16(a)(1)(G) notice regarding this type of testimony. Beltran-Arce moved for a mistrial, arguing that the reference to Mexico was unduly prejudicial. The district court denied the motion for mistrial and offered a curative instruction to the jury.

## II.

First, Beltran-Arce asks us to revisit the district court's initial decision allowing Sergeant Langan to offer general opinions about criminal drug activity and to interpret notes—that the government argued were drug records—found in a notepad seized from Beltran-Arce's residence. We review Beltran-Arce's claim that the district court erred in allowing Langan's expert testimony under an abuse of discretion standard. *United States v. Molina*, 172 F.3d 1048, 1056 (8th Cir. 1999).

We begin our analysis by noting that a district court has "broad discretion to allow law enforcement officials to testify as experts concerning the modus operandi

---

[1]Beltran-Arce states that he "filed a Motion in Limine to exclude Sergeant Langan's testimony." However, the record on appeal shows only a verbal objection to the government's intention to call Sergeant Langan as an expert witness. Interestingly, the district court does make references to Beltran-Arce's motion in limine, which supports the hypothesis that the district court considered Beltran-Arce's verbal objections as motions in limine. Nevertheless, we will accept that the issue was presented and addressed below and thus properly preserved for appellate review.

of drug dealers in areas concerning activities which are not something with which most jurors are familiar." *United States v. Sarabia-Martinez*, 276 F.3d 447, 452 (8th Cir. 2002) (citing *Molina*, 172 F.3d at 1056 (8th Cir. 1999)). Federal Rule of Evidence 702[2] permits a district court to allow testimony of a witness whose knowledge, skill, training, experience, or education will assist the trier of fact in understanding an area involving specialized subject matter. *Sarabia-Martinez*, 276 F.3d at 452.

The district court considered Sergeant Langan's twenty-five years of service as a police officer, his seventeen years in the Narcotics Unit, his fifteen years as a supervisor in the Narcotics Unit, the number of training sessions and seminars in narcotics investigations he has attended, the articles he has authored for law-enforcement journals, his service as an instructor in narcotics investigations at different training academies, and the fact that he has testified as an expert witness in federal and state courts over one hundred times. We are convinced that the district court's determination as to Sergeant Langan's expert-witness status was proper under Rule 702.

---

[2] Federal Rule of Evidence 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise if, (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principals and methods, and (3) the witness has applied the principals and methods reliably to the facts of the case.

III.

Second, Beltran-Arce alleges that Sergeant Langan's testimony was unduly prejudicial and erroneously led the jury to conclude that Beltran-Arce was keeping drug records. Beltran-Arce specifically objects to the testimony Sergeant Langan offered regarding a seized notepad. Sergeant Langan testified that it contained possible drug notes because numbers on the pad corresponded to certain drug quantities commonly sold on the streets. Sergeant Langan testified that 250 is a common amount associated with the sale of a quarter ounce of methamphetamine or cocaine and that 900 could be an amount associated with an ounce sale of cocaine.

Langan's testimony, even as it related to the numerical notations, was limited to his specialized knowledge that assisted the jury in its understanding of the evidence and aided the jury to determine facts at issue. Therefore, the probative value of Sergeant Langan's testimony substantially outweighed the danger of unfair prejudice, confusion of the issue, or misleading the jury. *United States v. Martinez,* 358 F.3d 1005, 1010 (8th Cir. 2004). Because Sergeant Langan's testimony was relevant to show knowledge, and the probative value of the testimony was not substantially outweighed by any danger of unfair prejudice, the district court did not abuse its discretion by allowing the expert testimony. *Id.*

IV.

Third, Beltran-Arce argues that the prosecution failed to follow the notification requirements of Fed. R. Crim. P. 16(a)(1)(G), and the district court erred in its denial of a mistrial based on the government's Rule 16 violations. We review a district court's denial of a motion for mistrial for an abuse of discretion. *United States v. Boyd*, 180 F.3d 967, 983 (8th Cir. 1999).

Federal Rule of Criminal Procedure 16 (a)(1)(G) requires that the government give the defendant a written summary of any expert testimony that the government intends to use under Rules of Evidence 702, 703, or 705 during its case-in-chief at trial. The summary must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications.

Here, in reference to Rule 16, the district court stated:

> It seems to me that Rule 16(a)(1)(G) is a rule that is generally not very well adhered to in this jurisdiction. It seems to me that it ought to be. It's a reasonable request, by the defendant and is one that would be required certainly in civil cases. And the purpose of the rule, generally speaking, is to give the opponent an opportunity to know the testimony of the expert witness in advance and then to be able to make a determination whether deposition testimony ought to be taken or a counter-expert should be retained.

> The difficulty is in our practice that the request, quote unquote, is made at the time of arraignment and certainly at the time of the arraignment government's counsel hasn't developed his trial strategy. So then the issue is when is a reasonable time that the government should provide this information to defense counsel?

> That issue has really never been broached in this jurisdiction as far as I'm aware. This is the first time that it has come up at least in my court. There's a progression order entered by the magistrate judge and I suspect that it doesn't have any such deadlines in it. Can either of you tell me whether it does?

As predicted by the district court, the progression order failed to address expert witness disclosure deadlines. In order to remedy this understandable omission, the

district court "tr[ied] to figure out what a reasonable time [would be]." The court's remedy was to require the government to provide the defense with a written summary within twenty-four hours after Beltran-Arce lodged his Rule 16 discovery request. The district court deemed the government's first attempt at compliance insufficient to satisfy the requirements of Rule 16. Indeed, the district court required the government to file three amendments to the summary before ruling that it was sufficient.

We are satisfied that the government's written summary in the original notice (and the three amended notices), which provided Beltran-Arce with a summary of the witness's qualifications, his opinions, and the basis supporting his opinions, was adequate to meet the notice deadlines imposed by Rule 16. However, our Rule 16 inquiry continues.

We next turn to Beltran-Arce's contention that Sergeant Langan's actual trial testimony went beyond the scope of the Rule 16 summary provided by the government. Sergeant Langan's testimony was mostly routine and substantially tracked the summary report. However, the government did not disclose to Beltran-Arce that Sergeant Langan would testify that most methamphetamine comes into Omaha from Mexico.[3] After this comment, the district court offered a cautionary

---

[3] The reference to Mexico was made in the following context:

Q [Mr. Cryne]. . . . Can you explain how a typical distribution chain would operate?

A [Sergeant Langan]. Typically the present situation in Omaha is this. The vast majority of meth coming into Omaha is coming up from the Country of Mexico into California –

Mr. O'Connor: Judge, I need a sidebar.

-6-

instruction to the jury. Beltran-Arce claims this cautionary instruction could not erase the "ethnic slant" that the government improperly utilized at trial. Beltran-Arce insists that this undisclosed testimony prejudiced his case to such a degree that a mistrial should have been ordered. We disagree.

Sergeant Langan's unsolicited mention of Mexico, albeit improper, was an isolated statement. The district court promptly addressed Beltran-Arce's objection and gave a curative instruction to the jury. The district court "is in a far better position to weigh the effect of improper testimony." *United States v. Davidson,* 122 F.3d 531, 538 (8th Cir. 1997). As we have oft stated, "less drastic measures such as a cautionary instruction are generally sufficient to alleviate prejudice flowing from improper testimony." *Id.* The government made no additional use of Sergeant Langan's undisclosed comment. Accordingly, we find that the curative instruction was an adequate remedy and the district court did not abuse its discretion in its decision not to order the more drastic remedy of mistrial.

## V. *Booker Error*

Beltran-Arce also attacks his sentence under *United States v. Booker*, 125 S. Ct. 738 (2005). In *Booker*, the United States Supreme Court held, in part, that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." 125 S. Ct. at 756. Beltran-Arce argues that his sentence violates *Booker* because the court made factual findings concerning the quantity of drugs and whether he possessed a firearm during the commission of at least one offense. Beltran-Arce did not, however, object to the factual assertions made in the presentence investigation report ("PSR"). "[A] fact in the PSR not specifically objected to is admitted for purposes of Booker." *United States v. McCully*, 407 F.3d 931, 933 (8th Cir. 2005) (citing Fed. R. Crim. P. 32(i)(3)).

While there was no constitutional *Booker* error, by applying the Guidelines as mandatory rather than advisory, the district court made a non-constitutional *Booker* error. *See United States v. Henderson*, 408 F.3d 1078,79 (8th Cir. 2005). Beltran-Arce failed to argue for an advisory application of the Guidelines, and, thus, we review for plain error. *United States v. Pirani*, 406 F.3d 543, 550 (2005) (en banc). Under our plain error analysis, Beltran-Arce is required to show "a 'reasonable probability,' based on the appellate record as a whole, that but for the error he would have received a more favorable sentence" to show that his substantial rights were affected. *Id*. at 552. (applying the third prong of the plain error test found in *United States v. Olano*, 507 U.S. 725 (1993)).

The Guidelines range for Beltran-Arce was between 235–293 months' imprisonment. At the sentencing hearing, counsel argued that even the low end of the Guidelines was unfair and improper under the facts and circumstances of Beltran-Arce's case. The court explained that, while it would like to grant a downward departure, it was not allowed under the Guidelines. Accordingly, the district court sentenced Beltran-Arce to the lowest possible sentence under the Guidelines, 235 months.

The fact that Beltran-Arce was sentenced at the bottom of the Guidelines range "is insufficient, without more, to demonstrate a reasonable probability that the court would have imposed a lesser sentence absent the *Booker* error." *United States v. Pirani*, 406 F.3d 543, 553 (8th Cir.2005). However, in this case, the record indicates that the court would have given Beltran-Arce a lesser sentence had the Guidelines not been mandatory. We are satisfied that there is a reasonable probability that the court would have imposed a lesser sentence had it viewed the Guidelines as advisory in conjunction with the factors listed in 18 U.S.C. § 3553(a). The record indicates that, based on Betlran-Arce's factual situation, the district court was not content with

recommended Guidelines range, and affirming the sentence despite the district court's erroneous belief that the Guidelines were mandatory would "seriously affect[ ] the fairness, integrity, or public reputation of judicial proceedings." *See United States v. Rodriguez-Ceballos*, 407 F.3d 937, 941–942 (8th Cir. 2005) (citations omitted). We recognize that "there may be plain *Booker* errors that meet the third *Olano* factor but not the fourth," *Pirani*, 406 F.3d at 554; however, we are persuaded that in this case Beltran-Arce has satisfied the fourth prong.

For the foregoing reasons, we affirm Beltran-Arce's convictions, but reverse and remand for resentencing.

_____