# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1892

_____

United States of America,           *
                                    *
            Appellee,               *
                                    *   Appeal from the United States
        v.                          *   District Court for the
                                    *   District of Nebraska.
Hashim Amin Cawthorn,               *
                                    *
            Appellant.              *

_____

Submitted: September 13, 2005
Filed: November 28, 2005

_____

Before LOKEN, Chief Judge, WOLLMAN, and BYE, Circuit Judges.

_____

BYE, Circuit Judge.

Hashim Cawthorn appeals his jury conviction by arguing the district court[1] erroneously limited cross-examination and admitted expert testimony, as well as claiming the evidence was insufficient to sustain the verdict. Cawthorn also appeals his sentence as unreasonable. We affirm.

_____

[1]The Honorable Lyle E. Strom, United States District Judge for the District of Nebraska.

I

Between 1998 and 2004, law enforcement encountered Cawthorn in several situations involving drugs, resulting in his prosecution and conviction. The significant events are summarized below.

On December 20, 1998, law enforcement officers executed a search warrant at 3317 Webster Street in Omaha, Nebraska, where Cawthorn resided with his mother and two brothers. The officers found crack cocaine (otherwise known as cocaine base), marijuana, firearms, scales, baggies, cash, and venue items. In a bedroom Cawthorn initially indicated was his, police found scales, 20.9 grams of crack cocaine in the pocket of a jacket in the closet, a revolver concealed in a heating vent, two shotguns under the bed which Cawthorn admitted were his, and venue items for Cawthorn and his brother. This search was the basis for a jury conviction on Count IX of the indictment, possession with intent to distribute crack cocaine.

On March 26, 2000, police executed a search at the club Heaven Knows after obtaining a warrant based on a confidential informant's statement s/he purchased drugs there from someone matching Cawthorn's description. Officers recovered a baggie containing 1.5 grams of crack cocaine just inside the front door. Cawthorn and ten others were present when the search was executed. Cawthorn was carrying $1,380 in cash, a pager, and a cell phone. Additionally, a swab of his left hand tested positive for cocaine residue. At trial, the prosecution sought to establish Cawthorn was working the door that night and owned the baggie of crack cocaine. This search was the basis for a jury conviction on Count VII, possession with intent to distribute crack cocaine.

To make its case on Count VII, the prosecution used an expert witness to show cocaine residue on Cawthorn's hand did not come from casual contact. The expert conducted two studies to show this. In one, he swabbed the hands of bank tellers and

a money counting machine. The expert reasoned because studies showed a large percentage of U.S. currency is contaminated with cocaine residue, then if residue could be transferred in sufficient quantities to test positive for cocaine the bank tellers or machine would test positive. They did not. In his second study, the expert swabbed the steering wheels of cars impounded by the Omaha police department due to drug activity, reasoning some of those wheels must have come into contact with cocaine residue, and therefore if residue could be transferred through casual contact they would test positive. They did not.

On November 7, 2003, a police officer was approached by a cooperating witness about participating in a controlled buy of crack cocaine from Cawthorn through a third party. The witness and third party drove to a parking lot where Cawthorn was inside a parked car. The third party entered Cawthorn's car, returned to the witness's car, and drove off. The witness turned over 2.2 grams of crack cocaine to the officer from the transaction. During these events, the officer also learned the witness made unsupervised purchases from Cawthorn.

On January 14, 2004, Cawthorn was stopped for driving without headlights and police found 8.9 grams of crack on his person.

In addition to the above events, the prosecution introduced witnesses who testified in accordance with their plea agreements about drug transactions with Cawthorn. During cross-examination, Cawthorn tried to ask these witnesses whether they generally lied or generally lied to police officers. The district court ruled these questions were impermissible.

After a guilty verdict by jury, the district court sentenced Cawthorn to 210 months in prison followed by five years of supervised release and ordered him to pay a $500 special assessment.

II

A

Cawthorn challenges the sufficiency of the evidence regarding Counts VII and IX, arguing he had neither knowledge nor control of the drugs in either count. We review the sufficiency of evidence to sustain a conviction de novo. United States v. Cruz, 285 F.3d 692, 697 (8th Cir. 2002). We will uphold a jury verdict if substantial evidence supports it, in other words if a reasonable jury could have found the defendant guilty beyond a reasonable doubt. Id. We view the evidence in the light most favorable to the verdict, resolve all conflicts in the verdict's favor, and accept all reasonable inferences supporting the verdict. United States v. Alexander, 408 F.3d 1003, 1008 (8th Cir. 2005). This standard of review is strict and we will not lightly overturn a jury verdict. Cruz, 285 F.3d at 697.

To establish possession with intent to distribute, the government must prove the defendant knowingly possessed a controlled substance and intended to distribute it. United States v. Serrano-Lopez, 366 F.3d 628, 634 (8th Cir. 2004). Cawthorn was not found in actual possession of the drugs, but possession can be actual or constructive. Id. To establish constructive possession, the government must show: (1) knowledge of an object, (2) the ability to control it, and (3) the intent to do so. Id. at 634-35. To have knowledge, the defendant must know of both the object's presence and its illegal character. Id. at 634 n.5.

1

Cawthorn claims no reasonable jury could find he had knowledge or control of the drugs found in the jacket at 3317 Webster Street. He argues several people occupied the house and the bedroom where the drugs were found and mere physical proximity to contraband is insufficient to sustain a conviction. Further, he notes it

was not established the jacket was his and no witness connected him to drug business at the house.

Cawthorn claims his case is analogous to United States v. Cruz, 285 F.3d 692 (8th Cir. 2002). In Cruz, the court overturned the convictions of two defendants on the basis of a lack of constructive possession. Regarding one defendant, the court noted "we will not lightly impute constructive possession of drugs or other contraband to one found in another's house," and "evidence of mere access and presence, without more, could not allow a reasonable jury to find [constructive possession] beyond a reasonable doubt." Id. at 699.

Cawthorn, unlike the defendants in Cruz, resided where the drugs were found. Because there were several inhabitants at his residence, his case is analogous to those where drugs are found in a house with several residents but not in areas under the exclusive possession of any individual. In such situations, while "'[t]he possession need not be exclusive, but may be joint,'" Cruz, 285 F.3d at 697 (quoting Ortega v. United States, 270 F.3d 540, 545 (8th Cir. 2001)), simply finding drugs in a portion of the house accessible equally to all occupants, without more, would be insufficient to sustain a conviction, United States v. Wajda, 810 F.2d 754, 762 (8th Cir. 1987). For situations in which this circuit has found there is more, see, for example, United States v. Lemon, 239 F.3d 968, 969-71 (8th Cir. 2001) (upholding a conviction for drugs found in another's apartment where the defendant had a key, venue items for defendant were in the apartment, the jury was free to disbelieve testimony the venue items belonged to someone else, an officer testified she observed defendant in an apparent drug sale a week before, and proof of defendant's prior drug trafficking was clearly relevant to the question of knowledge); United States v. Turner, 975 F.2d 490, 497 (8th Cir. 1992) (upholding a conviction where, in searching defendant's girlfriend's mother's house, police found a jacket with a pouch containing cocaine next to the bed where defendant was lying with his girlfriend and their baby, despite the fact the pouch did not have any fingerprints on it).

-5-

In this case, similarly, there is more: other witnesses testified to Cawthorn's drug-related activity; several males lived at the residence and there was only one bedroom where men's clothing was found; Cawthorn originally identified that bedroom as his; the jacket in the bedroom closet had 20.9 grams of crack cocaine; the bedroom had four scales, a revolver, two shotguns which Cawthorn claimed were his, and venue items for both the defendant and his brother; and the house further contained marijuana, baggies, and cash.

This is not a case where there was no evidence of Cawthorn's drug activity besides drugs found in common areas, nor is it a case where all the drug paraphernalia was hidden and belonged to someone else. Cf., e.g., United States v. Hernandez, 301 F.3d 886, 890-91 (8th Cir. 2002) (upholding district court's decision to set aside a verdict for insufficient evidence where defendant was arrested in a sting against her live-in boyfriend, but there was no evidence to suggest she was aware of the drugs and drug paraphernalia found hidden in her home nor was there any other evidence linking her with drug use or drug dealing).

Viewing the evidence in the light most favorable to the prosecution, a reasonable jury could find Cawthorn had both knowledge and ability to control the drugs.

2

Cawthorn similarly asserts his conviction should be overturned because no reasonable jury could find beyond a reasonable doubt he had knowledge or control of the baggie of crack cocaine on the floor inside Heaven Knows. Cawthorn argues this is so because the crack cocaine in Heaven Knows could have been possessed by any of eleven people present when police entered. The issue, however, is not how

many people were in the room,[2] but whether there is a sufficient nexus between Cawthorn and the drugs to uphold his conviction. See Wajda, 810 F.2d at 762-63.

The evidence, viewed in the light most favorable to the prosecution, establishes Cawthorn worked the door at Heaven Knows the night the search was executed; crack cocaine was found next to the door; Cawthorn was previously seen dealing and cooking crack cocaine at the club; a confidential informant gave information that s/he purchased drugs from someone matching Cawthorn's description at Heaven Knows; Cawthorn's left hand tested positive for cocaine residue; and he possessed $1380 in cash. Together, this is sufficient evidence for a reasonable jury to conclude beyond a reasonable doubt Cawthorn constructively possessed the crack cocaine.

B

Cawthorn next argues the hand swab evidence obtained at Heaven Knows should be excluded under Daubert v. Merrill Dow Pharmaceuticals, Inc., 509 U.S. 579, 125 L. Ed. 2d 469, 113 S. Ct. 2786 (1993), and Federal Rules of Evidence 702 and 403. We review the decision to permit expert testimony for an abuse of discretion. United States. v. Beltran-Arce, 415 F.3d 949, 949 (8th Cir. 2005).

1

Cawthorn claims the prosecutions's swabs and related testimony were scientifically unsound and thus inadmissible. Admission of expert testimony is guided by the principles of Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 125 L. Ed. 2d 469, 113 S. Ct. 2786 (1993). There are two prongs under Federal Rule of Evidence 702: (1) the knowledge must be scientific, technical, or other specialized

---

[2]We have previously upheld convictions in cases where multiple persons have been in a room with contraband. See, e.g., Turner, 975 F.2d 490.

knowledge; and (2) the knowledge must assist the trier of fact to understand the evidence or to determine a fact in issue. Larson v. Kempker, 414 F.3d 936, 942 (8th Cir. 2005).

Regarding the first prong, scientific "implies a grounding in the methods and procedures of science. Similarly, the word knowledge connotes more than subjective belief or unsupported speculation." Daubert, 509 U.S. at 590 (internal quotations omitted). "Proposed testimony must be supported by appropriate validation--i.e., good grounds, based on what is known." Id. (internal quotations omitted).

Regarding the second prong, assisting the trier of fact goes to relevance. Id. at 591. An "expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge--a rule which represents a most pervasive manifestation of the common law--insistence upon the most reliable sources of information." Id. at 592 (internal quotations omitted).

Here, Cawthorn does not question the reliability of the tests. Instead, he challenges the admissibility of the expert's testimony stating it is unlikely one would get cocaine on one's hands from casual contact with contaminated money or steering wheels.

Regarding the money, the expert tested a money counter and the hands of bank tellers over the course of a Saturday morning. He asserted studies show cocaine residue has contaminated a large percentage of cash in the United States and therefore, if casual contact with cocaine residue on money would generate a positive swab, the money counter and tellers' hands should test positive. They did not. This testimony is scientific, supported by appropriate validation, and helps the trier of fact understand the evidence.

Second, the expert witness tested steering wheels for cocaine residue. He tested cars impounded by the Omaha Police Department for drug offenses. The wheels did not test positive. The expert thus testified it is unlikely one would get cocaine contamination on one's hands from casual contact with steering wheels. However, the prosecution did not establish any of the steering wheels tested came into contact with cocaine or that any of the cars tested were impounded in cocaine-related offenses. Therefore, this testimony is infirm because it is not supported by appropriate validation and is unsupported speculation. See, e.g., Jaurequi v. Carter Mfg. Co., 173 F.3d 1076, 1084 (8th Cir. 1999) (finding opinion based on "unabashed speculation" fails the reliability prong of Daubert). We hold admitting this testimony was an abuse of discretion.

The error, however, was harmless. See United States v. J.H.H., 22 F.3d 821, 829-30 (8th Cir. 1994). There was a substantial amount of evidence notwithstanding the steering wheel testimony from which the jury could find guilt, the cross-examination of this testimony was substantial, and the judge limited the expert's testimony to cash and steering wheels.

2

Cawthorn also asserts the hand swabs and related testimony were unduly prejudicial under Federal Rule of Evidence 403. We review the admission of expert testimony for an abuse of discretion. Beltran-Arce, 415 F.3d at 949. A district court enjoys broad discretion in its determination of relevancy of expert testimony, and the judge in deciding whether relevant evidence should be excluded because its probative value is substantially outweighed by the danger of unfair prejudice exercises more control over experts than over lay witnesses. United States v. Nichols, 416 F.3d 811, 824-35 (8th Cir. 2005) (citing Daubert, 509 U.S. at 595). Weighing prejudice against probative value, we consider "'the degree of unfairness of the prejudicial evidence and whether it tends to support a decision on an improper basis.'" United States v.

<u>Noe</u>, 411 F.3d 878, 887 (8th Cir. 2005) (quoting <u>United States v. Dierling</u>, 131 F.3d 722, 730 (8th Cir. 1997)).

Regarding the testimony as to the swabs and steering wheels, we previously found admission of the test was an abuse of the district court's discretion under <u>Daubert</u> and Rule 702 and so need not address it further.

Regarding the expert's testimony as to the swabs and cash, Cawthorn argues the probative value was low and the prejudicial effect high. He notes the government was unable to rule out innocuous reasons for the traces and the testimony invited the jury to speculate he had handled drugs and convict on such improper basis. Moreover, defendant argues he was further prejudiced by the destruction of Cawthorn's hand swabs, making it impossible for him to independently analyze them.

While the probative value was low, the testimony was relevant to the extent it established cocaine residue could not be transferred in detectable quantities from any and every surface. Further, it was specifically relevant to whether it could be transferred from money and Cawthorn was carrying $1,380 in cash on the night in question. Any prejudicial effect allowing the jury to convict on an improper inference was minimized by a substantial cross-examination and the judge limiting the expert testimony to the cash and not other objects. Finally, with regard to the destruction of the hand swabs, it was improper for the government to destroy the evidence. However, there is no allegation of bad faith, and the behavior did not rise to such a prejudicial level as to warrant a conclusion the district court abused its discretion by admitting the evidence.

C

Cawthorn next alleges the court's rulings limiting his cross of prosecution witnesses violated the Confrontation Clause. "A Confrontation Clause violation is

shown when a defendant demonstrates that a reasonable jury might have received a significantly different impression of a witness's credibility had counsel been permitted to pursue the proposed line of cross-examination." United States v. Fox, 396 F.3d 1018, 1023 (8th Cir. 2005). However, the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination effective in whatever way, and to whatever extent, the defense might wish. United States v. Wipf, 397 F.3d 677, 682-83 (8th Cir. 2005). Trial judges retain wide latitude to impose reasonable limits based on concerns about, among other things, harassment, prejudice, confusion of the issues, witnesses' safety, repetition, or relevance. Id.

We reverse only for a clear abuse of discretion and a showing of prejudice. United States v. Jakoubek, 411 F.3d 951, 953 (8th Cir. 2005). The focus of the prejudice inquiry is on the particular witness, not on the outcome of the trial as a whole. Fox, 396 F.3d at 1023.

The district court here denied Cawthorn the ability to ask prosecution witnesses questions such as "Do you lie to authorities?"; "Would you lie to authorities to get something for it?"; and "Do you generally lie?" These questions are impermissible under Federal Rules of Evidence 404 and 608. Accordingly, because those rules do not impose unreasonable limits on cross-examination,[3] the court's decision to disallow Cawthorn's questions was not an abuse of discretion that prejudiced the defendant.

Rule 404 prohibits the introduction of character evidence for the purpose of proving conduct in conformity therewith. Rule 608 is an exception, allowing reputation and opinion testimony, as well as inquiry as to specific instances of conduct, in some circumstances. However, that exception does not apply here.

---

[3]The advisory committee notes to Rules 404 and 608 provide rationales for each rule's existence.

Cawthorn's questions seek neither to establish the general reputation of a witness nor do they ask for an opinion about such witness. Regarding specific instance of conduct, this exception does not apply because Cawthorn had no plausible basis to believe a witness committed the bad acts which were the subject of the inquiry. See, e.g., United States v. Elizondo, 920 F.2d 1308, 1313-14 (7th Cir. 1990).

Trial judges retain wide latitude to impose reasonable limits on cross-examination, and the Federal Rules of Evidence here also place reasonable limits on cross-examination. The trial court did not commit an abuse of discretion that prejudiced defendant.

D

Cawthorn finally contends his sentence was improper first because the district court felt obligated to follow Congress's declaration crack cocaine must be treated 100 times worse than powder cocaine, and second because a sentence applying this ratio is inherently unreasonable.

First, the Guidelines are now advisory and not mandatory. The district court treated them as such when it stated: "One of the factors that we have to look at [is] . . . a congressional mandate . . . making the declaration that crack cocaine . . . has to be treated 100 times worse than powder cocaine." The district court merely saw the congressional choice as a factor in the sentence; therefore Cawthorn's argument that the district court treated the crack-powder disparity as mandatory is without merit.

Second, the district court's duty at sentencing is to consider the Guidelines range but tailor the sentence in light of other statutory concerns as well, such as the sentencing factors listed in 18 U.S.C. § 3553(a). United States v. Spigner, 416 F.3d 708, 711 (8th Cir. 2005). Under § 3553(a), the court shall impose a sentence sufficient, but not greater than necessary, to, for example, account for the nature and

seriousness of the offense, provide just punishment, deter criminal conduct, protect the public, and avoid sentencing disparities. 18 U.S.C. § 3553(a).

We review the sentence for reasonableness. United States v. Dalton, 404 F.3d 1029, 1032 (8th Cir.2005). When a defendant's sentence is within the Guidelines range, it is presumptively reasonable. United States v. Lincoln, 413 F.3d 716, 718 (8th Cir. 2005).

Cawthorn argues it was error for the court *not* to sentence outside the Guidelines range because it is always unreasonable to treat crack cocaine 100 times worse than powder cocaine. The Seventh Circuit noted, in an unpublished opinion, "[defendant] has cited no case after Booker in which an appellate court has held that it is unreasonable *not* to give a defendant convicted of an offense involving crack a lower sentence than the one recommended by the guidelines." United States v. Herron, 2005 WL 1691370, at *2 (7th Cir. July 20, 2005). While we have not yet addressed the issue, the Seventh Circuit further reasoned "[g]iven the fact that this court has routinely upheld the differential against constitutional attack[4] . . . , and, under the pre- Booker guideline system, rejected wholesale downward departures from the guideline on this basis . . . , it would be inconsistent to require the district court to give a non-guideline sentence based on the differential." Id. We adopt this reasoning and hold sentencing within the Guidelines based on the crack-powder disparity is not inherently unreasonable.

III

For the reasons stated above, Cawthorn's conviction is affirmed.

_____

---

[4]We similarly upheld the constitutionality of the crack-to-powder ratio pre-Booker. See United States v. Clary, 34 F.3d 709, 710 (8th Cir. 1994).