# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3856

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Plaintiff - Appellee, | * |
| | * Appeal from the United States |
| v. | * District Court for the |
| | * District of South Dakota. |
| Darryl Joe Blakey, also known as | * |
| "Big Daddy," | * |
| | * |
| Defendant - Appellant. | * |

_____

Submitted: March 16, 2006
Filed: June 8, 2006

_____

Before COLLOTON, JOHN R. GIBSON, and GRUENDER, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

Darryl Blakey appeals from his conviction after jury trial of conspiracy to possess 50 grams or more of cocaine base with intent to distribute it and possession with intent to distribute the same amount of cocaine base. On appeal he argues that the district court[1] should have granted his motion to acquit because the evidence was insufficient to prove that he knew of or controlled the cocaine base found in his motel room. We affirm the conviction.

_____

[1]The Honorable Lawrence L. Piersol, United States District Judge for the District of South Dakota.

At trial, two witnesses testified that they were drug customers of Blakey and Alexander Rhea. Linda Paulson testified that beginning in June 2003 she often bought cocaine base, known as crack, from Blakey and Rhea. Once Blakey and Rhea came to her house to socialize, and once she went to their motel room. On both occasions, Rhea had crack in a plastic tic-tac box with a magnet attached to it and he allowed Paulson to use some crack. Paulson also saw Rhea hide cocaine in his sock. Several times during each evening, Rhea received a page, whereupon he would put some crack in a twist of brown paper, give it to Blakey with instructions on where to take it, and Blakey would leave. Blakey would soon return with money, which he would give to Rhea. Paulson herself also bought drugs from Rhea and Blakey, using the pager and receiving delivery from Blakey. Paulson testified that she had once rented a room for Rhea at the Motel 6 in Sioux Falls. Paulson said that she would purchase crack from Rhea and Blakey as frequently as ten times in a day.

Paul Hull was the second customer-witness. He also began buying drugs from Blakey and Rhea starting in June 2003. He would call Rhea on a cell phone to place his order, and Blakey would deliver the merchandise. Hull called Rhea and ordered $40 worth of crack the day that Blakely was arrested.

Police witnesses testified that they conducted surveillance at the Motel 6 in Sioux Falls on February 11, 2004, in preparation for executing a search warrant. They saw Blakey leave his room and drive to an apartment complex, where he got out and the police lost sight of him. He came back to the car and drove to a gas station, where police followed him. As Blakey came out of the station, the police advised him they had a warrant to search him and his car. They found a small twist of brown paper containing .2 grams of crack in his pocket, and numerous bindles in his socks that contained 2.7 grams of crack.[2] They also found $40 in cash, three hotel card-keys for

---

[2]Other evidence in the record indicates a different weight for the crack found on Blakey, but the discrepancy would make no difference to the outcome of the case.

Motel 6 and a cell phone for number 605.929.3699. There was testimony at trial that crack is sold in the form of rocks, which bring $20 to $40 apiece.

Police then executed a search warrant on Room 123 at the Motel 6. They found Rhea kneeling on the floor, leaning over one of the beds. Police lifted Rhea up and found $1817 in cash on the bed. Police searched the room and found crack on the floor behind a dresser, as well as a white sock containing crack. They also found a tic-tac box with a magnet affixed to it, stuck to the back of a small refrigerator; the tic-tac box also had crack residue in it. The search also turned up a crack pipe, three cell phones, and a pager. The total amount of crack found in the room was 221 grams.

Blakey had rented the room at Motel 6, paying in cash in advance for a week's stay.

Both Paulson and Hull said that they routinely called Rhea at cell phone number 929-3699, the number assigned to the phone found on Blakey. They said they used pager number 357-6537 to contact Rhea; that pager was found in the motel room. The government introduced telephone records showing that Paul Hull called cell phone number 929-3699 fifty-six times.

Blakey contends that the government did not adduce sufficient evidence to prove that he knew of or controlled the crack hidden in the motel room.

We review de novo the district court's denial of a motion to acquit for lack of sufficient evidence. United States v. Serrano-Lopez, 366 F.3d 628, 634 (8th Cir. 2004). We must affirm if there is substantial evidence to support the conviction, taking the evidence in the light most favorable to the government. United States v. Crenshaw, 359 F.3d 977, 987 (8th Cir. 2004) (quoting Glasser v. United States, 315 U.S. 60, 80 (1942), superseded by rule on other grounds as stated in Bourjaily v. United States, 483 U.S. 171, 177-78 (1987)). There is substantial evidence where a

-3-

rational finder of fact could have found each essential element of the crime beyond a reasonable doubt. Id. at 987-88.

To establish conspiracy to possess cocaine base with intent to distribute it, the government had to prove that there was an agreement to distribute drugs, that Blakey knew of the agreement, and that he intentionally joined in the agreement. United States v. Sanders, 341 F.3d 809, 815 (8th Cir. 2003). Blakey does not specifically challenge the sufficiency of the evidence to support the conspiracy charge, and the evidence is ample.

To establish possession with intent to distribute, the government must prove the defendant knowingly possessed a controlled substance and intended to distribute it. United States v. Cawthorn, 429 F.3d 793, 797-98 (8th Cir. 2006). Possession can be actual or constructive. Id. at 798. To prove constructive possession of the crack, the government must show the defendant knew of the crack, had the ability to control it, and intended to control it. Id. Possession need not be exclusive, but can be shared. Id. Constructive possession of drugs can be established either by Blakey's exercise of ownership, dominion, or control over the contraband itself or dominion over the premises in which the contraband is concealed. United States v. McCracken, 110 F.3d 535, 541 (8th Cir. 1997); United States v. DePugh, 993 F.2d 1362, 1364 (8th Cir. 1993). We have said that a "holder of [a] key, be it to the dwelling, vehicle or motel room in question, has constructive possession of the contents therein." United States v. Rice, 49 F.3d 378, 386 (8th Cir. 1995).

Blakey contends that there was no evidence he knew of the cocaine hidden in the motel room or that he exercised dominion over the motel room. There is substantial evidence of both. Paulson and Hull described an ongoing and very busy drug enterprise in which Rhea received calls and held the bulk of the inventory while Blakey made the deliveries. Police saw Blakey leave the Motel 6, stop by an apartment, and leave immediately. When they stopped him, he had crack in small

paper packages; $40 in cash, which was the going price for one to two rocks of crack; and the cell phone which Rhea used for drug contacts. Moreover, Paulson had seen Rhea in Blakey's presence using a tic tac box equipped with a magnet to store crack and storing crack in his sock. Blakey himself had crack in his socks when he was arrested. This is abundant evidence that the crack in the motel room was hidden in the sock and in the tic-tac box as a routine part of the Blakey-Rhea business practice. A rational jury could easily infer that Blakey knew of the crack hidden in the motel room.

The jury could also find that Blakey exercised dominion over both the crack itself and the motel room where it was found. Blakey had rented the motel room himself, he was in the room until he left to run an errand, and his personal effects were found in the room. When he was searched, he had keys to a Motel 6 room. Although Blakey's dominion was not exclusive because Rhea was in the room as well, there was evidence that the two cooperated in using the room as an operations base for the drug business. As for the crack itself, a person can be said to exercise dominion over drugs in another's possession if the relationship between defendant and holder is such that the defendant can produce the drugs for a customer at will: "It is enough if one person is sufficiently associated with another having physical possession that he is able to produce a controlled substance for a customer." United States v. Holm, 836 F.2d 1119, 1123 (8th Cir. 1988); accord United States v. Chauncey, 420 F.3d 864, 873 (8th Cir. 2005), cert. denied, 126 S. Ct. 1480 (2006). The jury could have found that the drugs were in the room for safekeeping while Blakey made a delivery, but that Blakey could and would have reduced them to possession immediately and without difficulty as soon as a customer requested them. There was sufficient evidence to support a finding of constructive possession.

Blakey also challenges the sufficiency of the evidence to support the element of intent to distribute the crack found on his person. This argument cannot affect the outcome of his case, since we have already decided he could be found accountable for

the larger amount of crack in the motel room. At any rate, as we have recounted, there was evidence that Blakey was the delivery man for a drug-selling business. He was caught with tiny sale-size bindles of drugs in his sock and $40 in cash after making what the jury could find was a delivery stop. Additionally, he told a police officer that he had been "running" crack for "quite a while." The evidence of intent to distribute is plainly sufficient.

We affirm the conviction.

_____