# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-1408
_____

United States of America

*Plaintiff - Appellee*

v.

William Thomas Hill

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Northern District of Iowa - Sioux City
_____

Submitted: January 17, 2020
Filed: April 7, 2020
[Unpublished]
_____

Before SMITH, Chief Judge, LOKEN and GRUENDER, Circuit Judges.
_____

PER CURIAM.

A jury found William Thomas Hill guilty of conspiracy to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846, and possession with intent to distribute methamphetamine, in violation of § 841(a)(1) and

841 (b)(1)(A). Hill appeals the district court's[1] order denying his motion for judgment of acquittal, in which he alleged lack of venue and insufficient evidence. He also appeals his 262-month sentence, arguing that the district court erred in applying a three-level enhancement for Hill being a manager or supervisor pursuant to U.S.S.G. § 3B1.1(b). We affirm.

## I. *Background*

In the summer of 2016, Hill contacted Shane Monell about selling methamphetamine on Facebook. Subsequently, on October 30, 2017, law enforcement had a confidential informant (CI) purchase methamphetamine from Monell. During the drug deal, Monell told the CI that his source was from California. At Hill's trial, Monell identified Hill as his source of supply. According to Monell, Hill sent Robinson Nguyen and Jocelyn Mendoza to deliver the methamphetamine.

After the October 2017 drug deal, Hill agreed to bring five pounds of methamphetamine from California to Sioux City, Iowa, to sell to Monell. On November 6, 2017, Hill, Kelvin Ross, Nieya Poellnitz, and Karina Watts traveled from California to Las Vegas, Nevada, in two different Kia sedans. The group stayed overnight in Las Vegas. On November 7, 2017, the group left for Sioux City. While in Las Vegas, Hill used his debit card to pay for Ross's tire repair. A receipt documented the transaction.

On November 8, 2017, Monell informed the CI that he was receiving five pounds of methamphetamine from his California source. He further told the CI that his source was on his way to meet Monell at Monell's father's home. Law enforcement surveilled the home and observed Hill arrive at the residence. Monell and Hill entered the residence; within ten minutes, Monell contacted the CI, stating

---

[1]The Honorable Leonard T. Strand, Chief Judge, United States District Court for the Northern District of Iowa.

"it's on." Trial Tr., Vol. 1., at 184, *United States v. Hill*, No. 5:17-cr-04071-LTS-KEM (N.D. Iowa Mar. 21, 2019), ECF No. 177. A short while later, Monell left the residence, and law enforcement arrested him. Hill, unaware of Monell's arrest, remained at Monell's father's home.

Monell provided a post-*Miranda* statement to officers. He informed officers that Hill was at Monell's father's home to sell five pounds of methamphetamine to Monell. At this point, Monell had counted some of the money with Hill for the drug deal but had not yet received the drugs.

Meanwhile, Hill had exited Monell's father's home. Officers arrested Hill; during the arrest, Hill threw his flip phone under a vehicle. Officers recovered the flip phone and an iPhone from Hill.

During and after Hill's arrest, his iPhone received text messages from a California number later identified as belonging to Ross. In the messages, Ross told Hill to answer his phone and to find them another hotel room. Ross also asked Hill why he was not answering his phone and warned Hill that, if he did not respond soon, the group would leave.

Officers located Ross's vehicle at the Town and Country Motel in Sioux City. Sioux City is in the Northern District of Iowa. Watts had rented the hotel room and had listed a California-plated vehicle, which belonged to Ross, on her registration. Officers executed a search warrant for the hotel room and the vehicle. Inside the hotel room, officers found Poellnitz, Ross, and Watts. They also seized two pounds of methamphetamine from the engine compartment of Ross's vehicle.

In reviewing Hill's phones, law enforcement discovered communications between Hill and Monell. These communications occurred "between late October 2017 up to November 8, 2017." Trial Tr., Vol. 2, at 292, *United States v. Hill*, No.

5:17-cr-04071-LTS-KEM (N.D. Iowa Mar. 21, 2019), ECF No. 178. For example, on November 8, 2017, Monell texted Hill that Monell "had three of the five pallets already spoken for." *Id.*

Officers also found a significant number of calls and messages exchanged between Hill and Ross during the same time period, but they were unable to retrieve the content of the messages to review. Officers did not recover any communications between Monell and Ross. Monell testified that he and Ross never communicated or knew of each other. Monell testified he "[n]ever heard of the man." Trial Tr., Vol. 1, at 247.

Hill and others were charged with conspiracy to distribute methamphetamine ("Count 1") and possession with intent to distribute methamphetamine ("Count 2"). The indictment also provided notice of a sentencing enhancement pursuant to 21 U.S.C. § 851.

At trial, the court denied Hill's motion for judgment of acquittal on Count 1 and reserved ruling on Count 2. The jury found Hill guilty on both counts. Hill then moved for a new trial and for judgment of acquittal. Hill argued that there was insufficient evidence on Counts 1 and 2. He also argued that the government failed to establish venue in the Northern District of Iowa for Count 2. The court denied Hill's motions.

Prior to sentencing, the presentence investigation report (PSR) calculated a base offense level of 36. It assessed a three-level enhancement for Hill being a manager or supervisor pursuant to U.S.S.G. § 3B1.1(b). Hill objected to application of the enhancement, "assert[ing] that the relationship between him and the individuals in the motel was 'never clearly established at trial' because none of them testified." PSR at 9, ¶ 28, *United States v. Hill*, No. 5:17-cr-04071-LTS-KEM (N.D. Iowa Feb. 5, 2019), ECF No. 155.

At sentencing, the district court overruled Hill's objection to application of the role enhancement, concluding that the government had established by a preponderance of the evidence that the enhancement applied. According to the district court, the record showed that Hill contacted Monell concerning drug sales in Iowa. Hill went to Iowa for the first delivery. Hill approached Ross about finding Hill a methamphetamine supplier. According to the court, the record showed that Nguyen and Mendoza ran drugs for Hill. The district court also found that "the government has shown that there are at least five participants." Sentencing Tr. at 20, *United States v. Hill*, No. 5:17-cr-04071-LTS-KEM (N.D. Iowa Mar. 21, 2019), ECF No. 179. Specifically, the court found that even if it excluded Poellnitz and Watts from the five-participant threshold, there were still at least five participants in the offense: Hill, Ross, Monell, Mendoza, and Nguyen.

The district court adopted the PSR's Guidelines calculation. Hill's total offense level was 39 and his criminal history category was III, resulting in a Guidelines range of 324 to 405 months' imprisonment. The court granted a downward variance regarding drug quantity and determined an alternative Guidelines range for variance purposes was 210 to 262 months' imprisonment. The court sentenced Hill to 262 months' imprisonment and five years' supervised release.

## II. *Discussion*

On appeal, Hill argues that the district court erred in denying his motion for judgment of acquittal because (1) the government failed to establish venue in the Northern District of Iowa for Count 2, and (2) insufficient evidence exists on Counts 1 and 2 to support the verdicts. He also argues that the district court erred in applying a three-level enhancement for Hill being a manager or supervisor pursuant to U.S.S.G. § 3B1.1(b).

A. *Motion for Judgment of Acquittal*

"We review de novo the denial of a motion for judgment of acquittal, and we reverse only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt." *United States v. Morales*, 445 F.3d 1081, 1084 (8th Cir. 2006) (internal quotation omitted). We view "the evidence in the light most favorable to the government and draw all reasonable inferences in its favor." *Id.* (internal quotation omitted).

1. *Venue*

Hill argues that there was insufficient evidence that he ever possessed methamphetamine in the Northern District of Iowa; therefore, he asserts that the government failed to prove venue.

> The government bears the burden of proving venue by a preponderance of the evidence and may establish it by either direct or circumstantial evidence. Proper venue lies in the district where the alleged offense was committed. If the offense was begun in one district and completed in another, or committed in multiple districts, the government may try the case in any district where the offense was begun, continued, or completed. This circuit has recognized possession of drugs with intent to distribute to be a continuing crime. The defendant does not have to actually possess the contraband; constructive possession is sufficient.

*United States v. Kiser*, 948 F.2d 418, 425 (8th Cir. 1991) (cleaned up).

"To prove constructive possession of the [contraband], the government must show the defendant knew of the [contraband], had the ability to control it, and intended to control it." *United States v. Blakey*, 449 F.3d 866, 869 (8th Cir. 2006). Possession can be exclusive or shared. *Id.* "Constructive possession of drugs can be established either by [the defendant's] exercise of ownership, dominion, or control over the contraband itself or dominion over the premises in which the contraband is

-6-

concealed." *Id.* "[A] person can be said to exercise dominion over drugs in another's possession if the relationship between defendant and holder is such that the defendant can produce the drugs for a customer at will . . . ." *Id.* at 869–70. Constructive possession is established "if one person is sufficiently associated with another having physical possession that he is able to produce a controlled substance for a customer." *Id.* at 870 (internal quotation omitted).

We conclude that the government proved by a preponderance of the evidence that Hill constructively possessed methamphetamine in the Northern District of Iowa. First, the evidence establishes Hill's knowledge of the methamphetamine. Monell was Hill's customer, not Ross's customer. During trial, Monell was asked whether "[p]rior to November 8, [he had] ever seen, talked to, heard from, [or] been involved with Kelvin Ross," and Monell replied, "Never heard of the man." Trial Tr., Vol. 1, at 247. Monell's testimony was corroborated by phone toll records presented at trial, which showed no communications between Ross and Monell. By contrast, there were communications between Ross and Hill and also between Monell and Hill. Furthermore, Hill had arranged the same trip from California to Sioux City, Iowa, two weeks prior to November 8, 2017, and engaged Mendoza and Nguyen to deliver the methamphetamine to Monell. Specifically, Monell testified that Hill "got ahold of me one time and said that he was in town and that he was at the Howard Johnson motel." *Id.* at 235. Monell then asked, "You're in town right now?" Hill replied, "Well, I'm not in town, but my boys are in town." *Id.* Hill clarified that "he had sent two people," which Monell identified as "Robinson Nguyen and Jocelyn Mendoza," to deliver the methamphetamine. Monell testified the quantity of methamphetamine "was about six or seven ounces." *Id.*

Second, the evidence establishes that Hill had the ability and intent to control the methamphetamine seized in Ross's car in the Northern District of Iowa. Hill agreed to deliver the methamphetamine to Monell. Monell testified that he asked Hill via text if Hill "could bring five pallets," i.e, "[f]ive pounds of methamphetamine" to

Monell. *Id.* at 240. According to Monell, Hill told him "they would bring it or they would be here at a certain time instead of himself. So [Monell] was expecting either [Hill] or somebody else." *Id.* at 241–42. On November 8, 2017, Hill called Monell "saying that he was in Omaha and he was almost there, that they were almost there and they'd be coming up." *Id.* at 242. Monell testified that he had "an agreement that [he was] going to redistribute methamphetamine in order to pay [Hill]." *Id.* at 246.

The evidence shows that Hill utilized Ross to deliver that methamphetamine to Monell. At the time of Hill's arrest, police discovered "a business card to the Tuscany Casino and Suites in Las Vegas, Nevada." *Id.* at 192. Police also recovered "a debit card with [Hill's] name on it." *Id.* at 193. And, the police recovered "numerous receipts" from Hill. *Id.* One of those receipts was "from Wal-Mart for a tire repair in Las Vegas, Nevada." *Id.* It was "a receipt from Wal-Mart for a tire repair for Kelvin Ross." *Id.* at 194. "On the receipt it show[ed] that it was paid for by the debit card . . . belong[ing] to [Hill]." *Id.* It was "for Mr. Ross's Kia," as the name "Kelvin Ross" appeared on the receipt, and "his vehicle information and license plate number" were on it. *Id.* Following Hill's arrest, police discovered the text messages from Ross "asking why Mr. Hill was not answering his phone" and "telling him to find another hotel, and also stating that they were going to leave if he didn't answer." *Id.* at 190. Based on the text messages, police searched Facebook and discovered the number belonged to Kelvin Ross. Police began "checking local hotels in the area for any California-plated vehicles or any vehicles registered to Kelvin Ross or any hotel rooms registered to Kelvin Ross." *Id.* at 191. A vehicle with California plates was discovered at the Town and Country Motel, registered to Kelvin Ross. *Id.* at 192. A subsequent search of Ross's vehicle uncovered two pounds of methamphetamine. Police recovered from Ross's wallet "a Wal-Mart receipt and a parking permit receipt from the Tuscany Hotel and Casino"—the same hotel Hill had a business card for. *Id.* at 203. The parking permit was dated "November 7 of '17." *Id.*

Accordingly, we hold that the district court did not err in denying Hill's motion for acquittal based on lack of venue.

## 2. *Sufficiency of the Evidence*

Hill next challenges the sufficiency of the evidence on Counts 1 and 2. "We review the sufficiency of the evidence after a bench trial in the light most favorable to the verdict, upholding the verdict if a reasonable factfinder could find the offense proved beyond a reasonable doubt." *United States v. Iqbal*, 869 F.3d 627, 629–30 (8th Cir. 2017).

Hill first argues that insufficient evidence exists that he constructively possessed the methamphetamine seized from Ross's car as charged in Count 1. For the reasons discussed above, we reject this argument. *See supra* Part II.A.1.

Hill next argues that insufficient evidence exists that he conspired with others to distribute methamphetamine as charged in Count 2. "To convict [Hill] of conspiracy to distribute [methamphetamine], the government had to prove that a conspiracy to distribute [methamphetamine] existed, that [Hill] knew of the conspiracy, and that [Hill] intentionally joined the conspiracy." *United States v. Williams*, 534 F.3d 980, 985 (8th Cir. 2008).

We hold that sufficient evidence supports all three elements of the conspiracy count. First, the evidence establishes that Hill agreed to sell methamphetamine to Monell. Monell testified that Hill was his source of supply. Monell also explained how he arranged one sale with Hill, who in turn sent Mendoza and Nguyen to deliver the methamphetamine for the drug deal in October 2017. Monell additionally detailed how he met Hill on November 8, 2017, at his father's house and counted money with Hill in anticipation of receiving the methamphetamine from Hill. Electronic communications between Hill and Monell showed that the men agreed that Hill

would bring five pounds of methamphetamine to Monell during the November 2017 trip.[2]

Second, the evidence shows that during the meeting between Hill and Monell, Ross attempted to contact Hill via text message, telling Hill to answer his phone, telling him to find Ross and others another hotel, asking Hill where he was, and threatening that the group was going to leave if Hill did not respond. Officers found Ross at the Town and Country Motel and, upon execution of a search warrant, seized two pounds of methamphetamine from Ross's vehicle. Phone records produced at trial showed the multiple communications between Hill and Monell and Hill and Ross around the dates of the drug deals.

In summary, the evidence shows that Hill knew the purpose of the conspiracy as its originator. He voluntarily and intentionally joined it and recruited others to participate in it. Accordingly, we hold that the district court did not err in denying Hill's motion for judgment of acquittal based on insufficient evidence.

B. *U.S.S.G. § 3B1.1(b)*

Hill's final argument is that the district court erred in applying the three-level enhancement for Hill being a manager or supervisor pursuant to U.S.S.G. § 3B1.1(b).

"We review factual findings for clear error and the district court's application of the Guidelines *de novo*." *United States v. Anderson*, 926 F.3d 954, 957 (8th Cir. 2019), *reh'g denied* (Aug. 23, 2019), *cert. denied*, 140 S. Ct. 823 (2020). A district court is permitted to "rely on facts proved by a preponderance of the evidence" at sentencing. *Id.*

---

[2]Ultimately, two pounds of methamphetamine were retrieved from Ross's vehicle.

"Section 3B1.1(b) of the Sentencing Guidelines provides a three-level enhancement '[i]f the defendant was a manager or supervisor . . . and the criminal activity involved five or more participants.'" *United States v. Mannings*, 850 F.3d 404, 409 (8th Cir. 2017) (alterations in original) (quoting U.S.S.G. § 3B1.1(b)). "We construe the terms 'manager' and 'supervisor' broadly." *United States v. Reyes-Ramirez*, 916 F.3d 1146, 1148 (8th Cir. 2019). "The key factors in determining management or supervisory authority are control over participants and organization of the criminal activity." *United States v. Valencia*, 829 F.3d 1007, 1012 (8th Cir. 2016) (internal quotation omitted). "We have held that a defendant may be subject to the enhancement even if he managed or supervised only one participant, limited to a single transaction." *United States v. Guzman*, 946 F.3d 1004, 1008 (8th Cir. 2020).

Hill argues that "[e]ven if they [Hill, Ross, Monell, Nguyen, and Mendoza] were working together, Hill was not supervising anyone." Appellant's Br. at 17. Thus, he questions only whether he was a "manager or supervisor," not whether the conspiracy involved five or more participants.

We hold that the evidence establishes that Hill managed or supervised at least one other participant in the drug conspiracy. *See Guzman*, 946 F.3d at 1008. In fact, the record shows that he supervised or managed several participants. First, Hill managed or supervised Monell. Contrary to Hill's argument, Hill and Monell had more than a mere buyer-seller relationship. Hill had contacted Monell about selling drugs in Iowa in the summer of 2016 via Facebook. Monell identified Hill as his source of supply in the methamphetamine trafficking business. According to Monell, he advised Hill that "whatever he wanted to bring out [to Sioux City, Iowa,] [Monell] *could get rid of for [Hill]*." Trial Tr., Vol. 1, at 234 (emphasis added). Hill then arranged the trips to Sioux City, Iowa, to provide Monell with the requested methamphetamine.

Second, Hill managed or supervised Ross. The evidence shows that Hill paid for Ross's car repair and had Ross on standby during the drug deal with Monell to deliver the methamphetamine to him, as evidenced by the text messages from Ross to Hill and the recovery of methamphetamine from Ross's car.

Third, Hill managed or supervised Nguyen and Mendoza. Monell testified that Hill, the source of Monell's drug supply, had Nguyen and Mendoza physically deliver the methamphetamine during October 2017.

Accordingly, we hold that the district court did not err in applying the three-level enhancement.

### III. *Conclusion*

The judgment of the district court is affirmed.

_____